No. 03-508

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 162

IN RE THE CUSTODY OF N.G.H.,
Minor Child of

DOUGLAS A. RILEY,

   Petitioner and Respondent,

 v.

KATHERINE M. AMUNDSEN,

   Respondent and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
      In and for the County of Missoula, Cause No. DR 96-83530
      The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     Julio K. Morales, Lucy W. Darty, Morales Law Office, Missoula, Montana

   For Respondent:

     Terry G. Sehestedt, Attorney at Law, Missoula, Montana

          Submitted on Briefs:  November 25, 2003

             Decided:  June 22, 2004

Filed:

         _____
             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Katherine M. Amundsen (Katherine) appeals the judgment of the Fourth Judicial District Court, Missoula County, declining to exercise continuing jurisdiction over Katherine's Motion for Change of Custody and Parenting and for Emergency Hearing for Temporary Custody.

¶2    We reverse and remand for proceedings consistent with this Opinion.

¶3    We address the following issue on appeal:  Did the District Court err in declining to exercise jurisdiction?

¶4    We decline to address Katherine's second issue presented on appeal:  Did the District Court err in failing to address Katherine's constitutional right to parent argument?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    Katherine and Douglas A. Riley (Douglas) had a daughter, N.G.H., on December 7, 1990, in Missoula, Montana.  N.G.H. is a special needs child, having been diagnosed with an unusual condition identified as "autistic behavior."  Katherine and Douglas were never married.

¶6    Upon Katherine's graduation from the University of Montana, Katherine moved with N.G.H. to Alabama where Katherine had obtained work.  Douglas remained in Missoula. Thereafter, Katherine and N.G.H. moved to Texas, where Katherine still resides.

¶7    A custody action was eventually filed in Missoula County by Douglas.  Both Katherine and Douglas were granted joint legal custody of N.G.H.  N.G.H. was to remain in Missoula with Douglas, so as not to disrupt her progress, given her special needs.

2

Katherine frequently contacted N.G.H. by telephone, and she visited N.G.H. several times over the years.

¶8    On August 15, 2002, Douglas gave written notice to the District Court that he intended to move to Clarkston, Washington, with N.G.H. no later than September 15, 2002. However, in December 2002, Katherine learned that N.G.H. was living with Douglas' parents in Clarkston, Washington, while Douglas still resided in Missoula.

¶9    Upon learning that Douglas still resided in Missoula, Katherine filed a Motion for Change of Custody and Parenting and for Emergency Hearing for Temporary Custody. Thereafter, Katherine's cause was referred to Missoula County's Standing Master, and an intervention conference was held on March 10, 2003.  No resolution was achieved at this conference, and a show cause hearing was set for March 18, 2003.

¶10    Rather than holding a hearing, Judge Henson met with both parties in his chambers. Neither party objected to jurisdiction and the matter was again referred to the Standing Master.  The Standing Master then issued an order regarding appointment of a guardian ad litem, after which, the District Court was asked to rule on whether Katherine had a constitutional right to raise N.G.H.  At that time, the District Court determined that the issue of jurisdiction needed to be addressed.  Specifically, the District Court found:

> The state of Washington has been the minor child's [N.G.H.] home state since September 2002.  N.G.H. and her paternal grandparents and her step-mother have been residing together in Washington since September 2002. Petitioner [Douglas] has been residing with his family for a three-day period every two weeks.  Evidence of N.G.H.'s schooling, her extensive healthcare and progress notes, and her personal relations is more readily available in the state of Washington.  Petitioner is in the process of moving from the state of Montana to the state of Washington and while it has been a slower process

3

than he anticipated, he will ultimately reside full-time in Washington. Respondent [Katherine] has resided in the state of Texas for the past several years. The Guardian ad Litem, most familiar with this family, has left the Missoula area and has declined to be further involved with the family. There is essentially no rationale for the state of Montana to exercise continuing jurisdiction simply because it exercised original jurisdiction. Both practical considerations and judicial efficiency demand that this Court decline further jurisdiction.

Therefore, the Court Orders these proceedings be stayed and that proceedings be initiated in the state of Washington, with the Washington court to address Respondent's outstanding motions.

¶11 Katherine now appeals the District Court's determination not to exercise jurisdiction.

## STANDARD OF REVIEW

¶12 We review a district court's decision to decline jurisdiction for an abuse of discretion.

*In re Marriage of Fontenot*, 2003 MT 242, ¶ 11, 317 Mont. 298, ¶ 11, 77 P.3d 206, ¶ 11.

## DISCUSSION

¶13 **1. Did the District Court err in declining to exercise jurisdiction?**

¶14 Katherine argues that the District Court erred in declining to exercise jurisdiction based upon the "interest of the child" factors of the Uniform Child Custody Jurisdiction Act (the UCCJA), as those factors are no longer proper. Rather, Katherine argues that under the factors of the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA), Montana is the appropriate forum given that: (1) N.G.H. resided with Douglas for at least six years prior to her move to Washington; (2) both Katherine and Douglas agreed that Montana was the proper jurisdiction; (3) the "majority of evidence" concerning N.G.H. is located in Missoula; (4) the District Court "had the ability to hear the case expeditiously, as it had addressed prior litigation between the parties, and had already presided over the

4

present case for a period of four (4) months;" and (5) the District Court was familiar with "the facts and issues in the pending litigation."

¶15 Douglas argues that the District Court did not abuse its discretion in declining to exercise its jurisdiction under the UCCJA, as Montana was an inconvenient forum under the factors listed. Specifically, Douglas argues that: (1) he was in the process of moving to Washington; (2) Katherine resided in Texas; (3) N.G.H.'s health and school records were in Washington; and (4) at the time of the District Court's decision, N.G.H. had been living in Washington for more than eight months. As such, the "two-tiered jurisdictional test" of the UCCJA was not established, and jurisdiction in Montana was inconvenient.

¶16 We recently addressed a similar jurisdictional argument in *In re Marriage of Fontenot*. In *In re Marriage of Fontenot*, we noted that the 1999 Montana Legislature adopted the UCCJEA to replace the former UCCJA, which had been in effect since 1977. *Fontenot*, ¶ 10. While the UCCJA focused on the "interest of the child," under the UCCJEA, a Montana court has jurisdiction in child custody disputes when Montana is the "home state" of the child. Section 40-7-201, MCA. Montana continues to have exclusive jurisdiction, § 40-7-202(2), MCA, unless a Montana court declines to exercise its jurisdiction by determining that Montana is "an inconvenient forum under the circumstances" and "a court of another state is a more appropriate forum." Section 40-7-108(1), MCA.

¶17 However, before determining that the forum is inconvenient, a court must first consider whether exercising its jurisdiction is appropriate. In so doing, a court shall consider the following:

5

(a) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(b) the length of time that the child has resided outside this state;
(c) the distance between the court in this state and the court in the state that would assume jurisdiction;
(d) the relative financial circumstances of the parties;
(e) any agreement of the parties as to which state should assume jurisdiction;
(f) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(g) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(h) the familiarity of the court of each state with the facts and issues in the pending litigation. Section 40-7-108(2)(a)-(h), MCA.

¶18 We note here that Douglas's arguments and the District Court's Opinion and Order both rely upon the jurisdictional test of the UCCJA, namely the "interest of the child" and the factors thereunder. Simply put, the UCCJA is no longer the law in determining jurisdictional disputes such as the one presented here. Rather, the law is the UCCJEA, and it requires first that the District Court enter findings regarding why exercising its jurisdiction is inappropriate under the above-quoted factors.

¶19 Here, the District Court did not enter the necessary findings under § 40-7-108(2)(a)-(h), MCA. Rather, the District Court noted that: (1) Washington was N.G.H.'s home state, since she had been living there since September 2002; (2) Douglas had been visiting N.G.H. "for a three-day period every two weeks;" (3) N.G.H.'s schooling, healthcare, and personal relations were "more readily available in the state of Washington;" (4) Douglas was in the process of moving to Washington; and (5) Katherine had resided in Texas for several years. Based upon these findings, the District Court summarily stated that there was "essentially no rationale for the state of Montana to exercise continuing jurisdiction simply because it

6

exercised original jurisdiction." Indeed, the District Court summarily stated as such without any attempt by the state of Washington to assert jurisdiction and with a concession by both parties that jurisdiction was appropriate in Montana.

¶20 We reverse the District Court's determination not to exercise jurisdiction, as its findings were based upon the former UCCJA "interest of the child" law and the factors thereunder. We remand this case to the District Court for a hearing under the current UCCJEA law, addressing the statutory factors listed in § 40-7-108(2)(a)-(h), MCA, regarding jurisdiction.

¶21 **2. Did the District Court err in failing to address Katherine's constitutional right to parent argument?**

¶22 Because we hold that the District Court erred in declining to exercise jurisdiction pursuant to the UCCJA, we decline to address Katherine's constitutional argument. Should Katherine choose to pursue her constitutional argument on remand, the District Court may rule on it at that time.

¶23 Reversed and Remanded for proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JIM RICE

7