No. 04-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 68

IN RE THE PARENTING OF D.A.H. and G.M.H.,
Minor Children

F.H. and W.H.,

       Petitioners and Appellants,

    v.

C.P.H.,

       Respondent and Respondent.


APPEAL FROM:    District Court of the First Judicial District,
                 In and for the County of Lewis and Clark, Cause No. ADR 2004-43
                 The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

       For Appellants:

           Miriam G. Luse, Attorney at Law, Helena, Montana

       For Respondent:

           Joan Hunter, Attorney at Law, Helena, Montana


Submitted on Briefs:  February 23, 2005

Decided:  March 22, 2005


Filed:

_____
                             Clerk
Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 F.H. and W.H., the maternal grandparents of D.A.H. (D.H.) and G.M.H. (G.H.), appeal the First Judicial District Court's dismissal of their action for want of jurisdiction. We affirm.

## ISSUE

¶2 The dispositive issue before this Court is whether the grandparents have standing to bring this action.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 S.H. and C.P.H. (C.H.) are the biological parents of D.H. and G.H. In May 2003, the family moved from Washington to Maine. On August 18, 2003, C.H. assaulted S.H., who required a short hospital stay for her injuries. Upon release from the hospital, S.H. sought a temporary protective order which was issued by a Maine court on August 20, 2003. On the following day, S.H. fled with her children to Oregon where her parents, F.H. and W.H., lived. She and the children have resided with her parents since that time.

¶4 On August 29, 2003, C.H. filed for divorce in Maine. S.H. was served with the divorce papers and answered the complaint. On September 9, 2003, S.H. applied to an Oregon court for a protective order. On November 7, 2003, the Maine court assumed jurisdiction and a temporary Order was entered by the court granting custody to C.H. On November 20, 2003, the children, their mother and their grandparents moved from Oregon to Helena, Montana, where the children started intensive therapy for post-traumatic stress disorder. Also, D.H., who was six years old at the time, started public school for the first

time.

¶5      On January 8, 2004, the Maine court ordered S.H. to return the children to Maine on or before February 15, 2004.  On February 6, 2004, the grandparents filed an emergency *ex parte* motion under § 40-7-204, MCA, in the First Judicial District Court of Montana, requesting that the District Court issue an order blocking the Maine Order to return the children.  On March 8, 2004, the Montana District Court entered a jurisdictional order accepting jurisdiction of the children.  Subsequently, in accordance with § 40-7-204(4), MCA, of the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), the Montana District Court communicated with the Maine court.  As a result of this communication, the District Court entered an order declining jurisdiction, dismissing the case and remanding the matter to the Maine court.  The grandparents filed a timely appeal.

## STANDARD OF REVIEW

¶6      We review a district court's decision to decline jurisdiction for an abuse of discretion. *Riley v. Amundsen* (*In re Custody of N.G.H.*), 2004 MT 162, ¶ 12, 322 Mont. 20, ¶ 12, 92 P.3d 1215, ¶ 12 (citing *In re Marriage of Fontenot*, 2003 MT 242, ¶ 11, 317 Mont. 298, ¶ 11, 77 P.3d 206, ¶ 11).

## DISCUSSION

¶7      As a general rule, we decline to address on appeal an issue not raised by the parties before the District Court.  See *Armstrong v. State*, 1999 MT 261, ¶ 4, 296 Mont. 361, ¶ 4, 989 P.2d 364, ¶ 4; *Mortgage Source, Inc. v. Strong*, 2003 MT 205, ¶ 14 , 317 Mont. 37, ¶ 14, 75 P.3d 304, ¶ 14.  Questions of standing, however, are an exception to that rule.

3

Standing is a threshold requirement of every case and may be raised by this Court *sua sponte* or, as in this case, by the parties in their appeal briefs. *Armstrong*, ¶ 4.

¶8      Standing is a person's right to make a legal claim or seek judicial enforcement of a duty or right. Black's Law Dictionary, Seventh Edition. Standing is closely linked to a court's jurisdiction--a court that would otherwise have jurisdiction to hear and decide a matter will not have jurisdiction if a person without standing attempts to bring the action. See *Edwards v. Burke*, 2004 MT 350, 324 Mont. 358, 102 P.3d 1271. Moreover, because Montana law recognizes the importance of the rights involved in the natural parent-child relationship, the legislature has enacted a variety of statutory schemes pertaining to custody of children and the manner in which a third party, non-parent, may intercede in the parent-child relationship. *Girard v. Williams*, 1998 MT 231, ¶ 17, 291 Mont. 49, ¶ 17, 966 P.2d 1155, ¶ 17. *See* Title 41, Chapter 3, MCA (termination of parental rights for abuse and neglect); Title 40, Chapter 6, MCA (the Uniform Parentage Act); and Title 40, Chapter 4, MCA (the Uniform Marriage and Divorce Act)(UMDA). We stated in *Girar*d that when determining whether a non-parent has standing to intervene and petition for custody, we must first determine whether the underlying proceeding is a custody action or some other type of parental rights action. *Girard*, ¶ 27. In the case before us, W.H. and F.H. sought emergency relief under the UCCJEA, claiming that custody of D.H. and G.H. should remain with their family in Montana. Therefore, this is a custody proceeding and, in accordance with *Girard*, non-parent standing will be determined under the UMDA. *Girard*, ¶ 31.

¶9      Section 40-4-211, MCA, defines a court's jurisdictional authority for child custody

or parenting proceedings under the UMDA. Section 40-4-211(4)(a) and (b), MCA, identify those persons who may commence parenting proceedings. In addition to allowing a parent to do so, § 40-4-211(4)(b), MCA, allows a parenting plan proceeding to be commenced in district court "by a person other than a parent if the person has established a child-parent relationship with the child, by filing a petition for parenting in the county in which the child resides or is found."

¶10    F.H. and W.H. argue that they have developed the necessary "child-parent relationship" with D.H. and G.H. They cite the definition for "child-parent relationship" found in § 40-4-211(6), MCA, and provide numerous examples to prove that such a relationship existed. What they have not done, however, is satisfy the statutory predicate which requires the filing of a petition for parenting in the county in which the child is found, followed by the notice to all interested parties, court-ordered investigation, and hearings contemplated by § 40-4-211, *et. seq.*, MCA. It is undisputed that the grandparents have not filed such a petition.

¶11    The petition filed before the District Court in this matter sought to keep the children with the grandparents by invoking the District Court's emergency jurisdiction under § 40-7-204(4), MCA. However, the grandparents sought more than temporary emergency jurisdiction; they also sought--and claim on appeal that the court erred in denying--a custody determination. The UCCJEA is not intended to be a vehicle whereby persons with no legal right to custody may sidestep the statutory pre-requisites to obtaining parental rights. Here, no petition for the establishment of parenting rights has been filed, nor has either biological

parent voluntarily relinquished custody to the grandparents or had their parental rights terminated. Thus, the grandparents cannot make the predicate showing that they are entitled to custody of these children in the first instance. We therefore conclude that they do not have standing to gain custody of the children under the UCCJEA.

¶12     The dissent maintains that we have disregarded the best interests of the children in reaching our decision. We have not. We agree there is evidence to suggest that the father may not be the best of custodians for the children; such factors make decisions like this very difficult to make. However, the fact remains that a party claiming entitlement to custody must comply with the procedural requisites noted above. If, as the Dissent argues, the best interests of the children were the sole factor deserving consideration, then any person asserting the best interests of the children would arguably have standing to gain their custody, notwithstanding the fact that legal custody of such children rested with a stranger to the proceeding.

¶13     It is not this Court that placed this case in the posture we now find ourselves facing. While it appears the mother did file a petition to intervene in the proceedings two months after the grandparents commenced these proceedings, she did so in support of their petition, and not as a parent asserting her own custodial rights. Moreover, there is no question that the grandparents are seeking not just emergency protection, but outright legal custody of the children. Under such circumstances, we cannot simply ignore the statutory requirement that the person asserting custodial rights first demonstrate a right to custody under the law. We do not rejoice in the decision we make here; however, it is not our office to render the

6

custody statutes passed by the legislature superfluous.

¶14    Based upon the foregoing, we conclude that F.H. and W.H. do not have standing to bring this emergency custody determination.    Therefore, although the District Court declined jurisdiction for reasons other than those stated here, we conclude the court reached the correct decision.    As we have frequently stated, we will affirm district court decisions which reach the right result, regardless of the court's reasoning.  *Phillips v. City of Billings* (1988), 233 Mont. 249, 252, 758 P.2d 772, 774.

## CONCLUSION

¶15    For the foregoing reasons, we affirm the District Court.


/S/ PATRICIA O. COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ JAMES C. NELSON


7

Justice Brian Morris dissents.

¶16     In its rush to elevate the form of § 40-4-211(4)(b), MCA, requiring a non-parent to file a petition establishing a "child-parent relationship," over the intent of the Uniform Marriage and Divorce Act, the Court loses sight of the primary purpose of custody determination proceedings under Title 40, Chapter 4, part 2–to further and protect the best interests of the child. The Court's decision also wrongly imputes to the grandparents deceptive designs regarding the temporary emergency jurisdiction of the court under Title 40, Chapter 7, part 2 and the custody of the children where the record contains no evidence of any such intention.

¶17     The Court dismisses the grandparents' appeal for lack of standing. The Court bases its decision on the grandparents' failure to satisfy the statutory predicate requiring the filing of a petition for parenting establishing their "child-parent relationship" with the children. The majority ignores, however, evidence presented to the District Court that the grandparents had fulfilled the "child-parent relationship" requirements and relies instead on the absence of a petition establishing the same.

¶18     Under § 40-4-211(4)(b), MCA, a parenting plan proceeding may be commenced in district court "by a person other than a parent if the person has established a child-parent relationship with the child, by filing a petition for parenting in the county in which the child resides or is found." A "child-parent relationship" under § 40-4-211(6), MCA, requires that a person provide for the physical needs of a child by supplying food, shelter, and clothing as well as the necessary care, education and discipline that continues on a day-to-day basis through interaction and companionship that fulfill the child's psychological needs. Section

8

40-4-211(6), MCA. A court determines the best interests of a child by considering, *inter alia,* the wishes of the child and his or her parents, the child's adjustment to home, school and community, the mental and physical health of all individuals involved and the physical abuse or threat of physical abuse by one parent against the other parent or the child. Section 40-4-212, MCA.

¶19     The record indicates that the grandparents had developed a "child-parent relationship" with the children. In addition to housing and feeding the children on a day-to-day basis, they have enrolled the boys, ages 5 and 6, in intensive psychological therapy to combat their post-traumatic stress disorder and depression resulting from the physical and emotional abuse they suffered at their father's hands. The grandparents also discipline and care for the children after their frequent and violent outbursts, often manifested through inappropriate sexual activity and masturbation and aggressive behavior towards adults and each other. It is no stretch to say that the grandparents provide not only the primary care for these children, but in their "child-parent relationship," also foster loving concern for the children's best interests. To deny the grandparents care of the children for failure to produce a petition establishing a "child-parent relationship" disregards the statutory intent of furthering and protecting the best interests of the children.

¶20     The Court also imputes misleading intentions to the grandparents' appeal for temporary emergency jurisdiction where none exist. The Court believes the grandparents, in invoking the District Court's temporary emergency jurisdiction, actually sought a custody determination. The Court concludes that the grandparents' failure to file a petition establishing their "child-parent relationship" with the children prevents them from seeking

9

a custody determination. The fact that the mother filed a petition to intervene as a party in support of the grandparents on April 14, 2004, should have alleviated the Court's fear that the grandparents were seeking an end run around the normal custody proceedings. The District Court dismissed the grandparents' petition on May 3, 2004, however, without ever ruling on the mother's attempt to intervene. Nevertheless, the Court ignores the jurisdictional statutes under Title 40, Section 7, part 2, that provide a district court temporary emergency jurisdiction in particular circumstances.

¶21 Under § 40-7-204(1), MCA, a district court possesses temporary emergency jurisdiction if the child is present in the state or it is necessary in an emergency to protect the child from abuse. In this instance, the record indicates that the father had emotionally and physically abused both the children and their mother during their three-month stay in Maine. The mother's injuries were so severe that she remained hospitalized for three days after one attack and obtained a protective order against the father. The Court downplays the severity of the mother's injuries when it refers to her "short hospital stay." ¶ 3. In fact, the mother spent three of her 108 days in Maine in the hospital.

¶22 The children not only witnessed their father's violent attacks against their mother, but also continued to suffer the effects of his violence towards them, as exhibited through their post-traumatic stress disorders and aggressive and abusive behavior. Moreover, the children's therapist concluded from the children's admissions concerning their father and his abusive nature that it would be very detrimental for the children to return to Maine given the anxiety and depression they exhibit.

¶23 Similarly, under § 40-7-201(a) and (b), MCA, the children failed to live in any one

state pertinent to the proceedings for more than six months prior to the filing so the District Court had jurisdiction to make an *initial* child custody determination. The children stayed in Maine only for three months before their father's violence forced their mother to flee with them to their grandparents. The family actually stayed at the house of another women and her two children during their 108 days in Maine. The father, himself, could not satisfy Maine's own 6-month residency requirement when he filed for divorce from the mother on August 29, 2003. Title 19A Me. Rev. Stat. Ann. § 901(a) (2004). At that point, he had resided in Maine for fewer than four months.

¶24 Further, considerable doubt surrounds the validity of the Maine court's decision of November 7, 2003, to assume jurisdiction and make an initial child custody determination considering the children's brief stay in Maine and their abrupt departure on August 20, 2003. Title 19A Me. Rev. Stat. Ann. § 1745 (2004). By contrast, substantial evidence regarding the children's care, protection, training and personal relationships remains within Montana, including their mother, grandparents, therapists and school teachers, rather than in Maine, where the children spent three months of their young lives. Section 40-7-201(b)(ii), MCA. As such, any jurisdictional determination should have considered the children's welfare and their continuing improvements in the community.

¶25 The Court disregards the best interests of the children when it requires the grandparents to file a petition evidencing a "child-parent relationship" before proceeding to the merits of the case. The mother sought to intervene in this same proceeding before the District Court dismissed the case and she surely had standing to bring the petition. *See* Section 40-4-211(4)(a), MCA, and § 40-7-204(1), MCA.

¶26    In all matters involving minor children, we have consistently held that the primary guide remains the best interests of the minor child. *Firman v. Firman* (1980), 187 Mont. 465, 468, 610 P.2d 178, 180. The Court's opinion effectively abandons that principle. This outcome seems particularly jarring in light of our admonition to district courts "to give priority to the safety of victims of domestic violence when considering jurisdictional issues under the UCCJEA." *In re Marriage of Stoneman*, 2003 MT 25, ¶ 26, 314 Mont. 139, ¶ 26, 64 P.3d 997, ¶ 26.

¶27    I respectfully dissent.

/S/ BRIAN MORRIS