329 P.3d 341

**NB, Plaintiff–Appellant,**

v.

**GA, Defendant–Appellee,**

and

**Child Support Enforcement Agency, State of Hawaii, Defendant.**

Nos. CAAP–13–0000171, CAAP–13–0001118.

Intermediate Court of Appeals of Hawaiʻi.

May 23, 2014.

Huilin Dong, Honolulu, on the briefs, for Plaintiff–Appellant.

Michael A. Glenn, on the briefs, for Defendant–Appellee.

NAKAMURA, C.J., FUJISE and REIFURTH, JJ.

Opinion of the Court by REIFURTH, J.

In this consolidated appeal, Plaintiff–Appellant NB ("Father") appeals from (1) the Order Setting Aside Hearing Date filed February 19, 2013, (2) the Record of Communication Between Courts ("Record of Communication") filed February 19, 2013, and (3) the Order Denying Motion for Relief from Orders/Stay of Orders filed May 23, 2013 in the Family Court of the First Circuit ("Family Court")[1], in which the Family Court declined to exercise jurisdiction over the dispute between Father and GA ("Mother") over custody of their daughter ("Daughter"). Father

challenges certain findings of fact ("FOF") and conclusions of law ("COL") in the Findings of Fact and Conclusions of Law issued by the Family Court on May 28, 2013 ("FOF/COL").

We vacate that portion of the Record of Communication stating that "Hawaii declines jurisdiction[,]" as well as the FOF/COL. We instruct the Family Court to defer ruling on Father's previous motions, pending a determination as to whether it is more appropriate for Florida to exercise jurisdiction pursuant to Hawaii Revised Statutes ("HRS") § 583A–207.

## I. BACKGROUND

Daughter was born on August 31, 2004 in California. Father, Mother, and Daughter apparently lived in Hawai'i for some period of time between November 2005 and August 2007. On August 20, 2007, Father filed a Petition for Paternity or for Custody, Visitation and Support Orders After Voluntary Establishment of Paternity ("Petition for Paternity"). The petition contended that Daughter was then living in Honolulu with both Mother and Father. That claim notwithstanding, the related Affidavit of Serving Officer Without the State of Hawaii stated that Mother was served with a copy of the petition at an address in Miami Beach, Florida.

Mother, appearing by telephone, Father, and their respective attorneys were present at a November 1, 2007 return date hearing on the Petition for Paternity. On November 13, 2007, the Family Court entered a Stipulated Judgment of Paternity.[2] Legal custody of Daughter was awarded to Mother and Father jointly, and the issue of physical custody was reserved for trial. Prior to the scheduled trial, Father and Mother resolved physical custody via stipulation on January 3, 2008 ("Stipulated Joint Custody Order"), with Daughter to spend some holidays and two months each summer with Father.[3]

---

1. The Honorable Jennifer L. Ching presided over the challenged proceedings, orders, and the Record of Communication.

2. The Honorable Nancy Ryan presided over the proceedings.

3. The Honorable Paul T. Murakami presided over the proceedings.

On March 13, 2009, Father filed a Motion for Relief After Judgment or Order and Declaration, requesting sole physical custody of Daughter. Father subsequently filed an Amended Motion for Relief After Judgment or Order and Declaration on May 7, 2009. Father, however, withdrew the motions on June 22, 2009, stating that Mother had not been served with the motions.

More than three years passed and, on August 8, 2012, Father filed an Ex Parte Motion for an Order Granting Plaintiff Temporary Sole Custody of His Minor Child or in the Alternative to Shorten the Time For Hearing Plaintiff's Motion for Relief After Judgment or Order and Declaration, which was denied. On August 13, 2012, Father filed another Motion for Relief After Judgment or Order and Declaration ("Motion for Sole Custody"), in which he requested sole physical and legal custody of Daughter. The declaration accompanying the motion appeared to imply, without expressly stating, that, at the time of the filing, Daughter was in Hawai'i and living with Father. On August 23, 2012, Father submitted another Ex Parte Motion for an Order Granting Plaintiff Temporary Sole Custody of His Minor Child. On August 28, 2012, the Family Court granted Father's ex parte motion giving him temporary sole physical and legal custody, and ordered a hearing on September 27, 2012.

On September 13, 2012, Michael A. Glenn entered a special appearance of counsel on behalf of Mother, in order to contest the Family Court's jurisdiction. On September 17, 2012, Glenn submitted an "Order Setting Hearing," dated September 13, 2012, from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("Florida court"). According to the order, Mother had filed an emergency verified petition to domesticate and enforce out of state custody agreement ("Emergency Verified Petition") in the Florida court.[4]

On September 27, 2012, the Family Court stayed the proceedings in Hawai'i, pending communication between the Family Court and the Florida court. The September 27, 2012 hearing was postponed until the origi-

nally scheduled December 6, 2012 hearing on Father's Motion for Sole Custody, and then again until February 28, 2013.

The Family Court held a telephone conference call with the Florida court on February 7, 2013, at 12:00 p.m. ET, with the call transcribed by a stenographer in Florida. According to the transcription, also present on the conference call were Grant Gisondo, an attorney for Mother, and Jason Brodie, an attorney for Father located in Florida. Father's Florida attorney objected to the fact that he, Father, and Father's Hawai'i attorney had received no notice of the conference setting; and that neither Father nor his Hawai'i attorney were present for the call because the Hawai'i courthouse was not open. Counsel stated that "my client wanted to be able to present evidence and testimony and legal argument, as he's entitled to."

The Florida court responded:

"This conference was set up and we had a hearing the other day. You were notified of that. If you had ... wanted those parties to also be available, they would either be in this courtroom or you could have set it up on a proper telephonic conference situation, but as it is, this has been a previously-set hearing...."

The Florida court stated that it was the home state of the child under the Uniform Child Custody Jurisdiction and Enforcement Act ("Uniform Act") and that on "the issue of forum non conveniens," the best place for jurisdiction was Florida. The Florida court suggested that the Family Court decline jurisdiction and the Family Court agreed. The Florida court stated that it would make "some determination [of] what's in the best interest of this child" with regard to staying with her schooling in Hawai'i. Mr. Gisondo made an oral motion for visitation or return of Daughter to Mother. The Florida court advised Mr. Gisondo "to make a formal motion so all the parties can have an opportunity to address this[.]"

On February 19, 2013, the Family Court filed the Record of Communication, stating that "[the Florida court] and [Family Court]

---

4. It is not clear from the record when the Emergency Verified Petition was filed. In her answer-

ing brief, however, Mother states that it was filed on September 12, 2012.

agreed that it is appropriate for Florida to have jurisdiction. Hawaii declines jurisdiction." That same day, the Family Court set aside the February 28, 2013 hearing on Father's Motion for Sole Custody.

On March 18, 2013, the Family Court entered an Order to Submit Proposed Findings of Fact and Conclusions of Law, which advised that an appeal had been taken in the case and directed the parties to submit proposed FOF and COL within ten days of the notice of appeal. Mother and Father submitted proposed FOF and COL on April 11, 2013, and April 12, 2013, respectively.

On March 22, 2013, Father filed a "Motion for Relief from the Orders of 2/19/13 Pursuant to [Hawai'i Family Court Rules] Rule 60; In the Alternative, to Stay the Orders of 2/19/13" ("Motion for Relief"). The Family Court held a hearing on the Motion for Relief on May 23, 2013, and denied the motion.

The Family Court entered the FOF/COL on May 28, 2013. FOF 3 provided that "[f]rom 2006 until mid–2012, [Daughter] lived primarily with Mother in Florida, and visited with Father in Hawaii." FOFs 12–15 stated as follows:

12. During the communication between [the Family] Court and the [Florida court], Mother and her Florida counsel, and Father's counsel were present in [Florida court].

13. A recorded transcript was made of this communication.

14. The [Florida court] determined that the State of Florida had jurisdiction over the subject matter and the parties. It was also noted during the communication that most of the evidence is in Florida.

15. [The Family] Court and the [Florida court] determined, and agreed, that

Florida is the more appropriate forum. Hawaii declined jurisdiction.

The COLs stated, in relevant part, as follows:

3. Under HRS Section 583A–110(a) [5], a court of this State may communicate with a court in another state concerning a proceeding arising under the [Uniform Act].

. . . .

9. HRS Section 583A–110 was complied with.

10. HRS Section 583A–206 governs simultaneous proceedings.

11. Under HRS Section 583A–206(a), a court of Hawaii shall not exercise its jurisdiction if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with the [Uniform Act].

. . . .

16. Under Section 583A–206(b), if the court of the state having jurisdiction substantially in accordance with the [Uniform Act] does not determine that the court of this State is a more appropriate forum, the court of this State shall dismiss the proceeding.

. . . .

20. [The Family] Court properly and correctly, after communicating with the Florida court, declined jurisdiction in this matter.

## II. POINTS OF ERROR

On appeal, Father contends that (1) FOF 3 is clearly-erroneous because Hawai'i was Daughter's home state from 2005–2008, when Father filed his paternity petition, and (2) COLs 10–20 are clearly wrong.[6]

---

**5.** HRS § 583A–110 sets out the procedure for communication between courts regarding jurisdictional issues related to child-custody proceedings. Haw.Rev.Stat. § 583A–110 (2006).

**6.** Father's points of error do not comply with Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4). As the Hawai'i Supreme Court has noted, however, "[N]oncompliance with Rule 28 does not always result in dismissal of the claims, and 'this court ... has consistently adhered to the policy of affording litigants the op-

portunity to have their cases heard on the merits, where possible.' " *Marvin v. Pflueger*, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (original brackets omitted) (quoting *Morgan v. Planning Dept.* 104 Hawai'i 173, 180–81, 86 P.3d 982, 989–90 (2004)). Here, to the extent that we are able to discern with reasonable clarity the alleged error committed by the Family Court, and where in the record the alleged error occurred, and taking into account that the FOF/COL were not filed until after Father filed his notice of appeal, we will consider the issues on their mer-

## III. STANDARDS OF REVIEW

Whether the family court properly exercised jurisdiction is a question of law which we review *de novo*. *In re Doe*, 96 Hawai'i 272, 283, 30 P.3d 878, 889 (2001).

"A trial court's FOFs are subject to the clearly erroneous standard of review." *Ueoka v. Szymanski*, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005) (citations omitted).

An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Bremer v. Weeks*, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (quoting *Beneficial Hawai'i, Inc. v. Kida*, 96 Hawai'i 289, 305, 30 P.3d 895, 911 (2001)).

The appellate court reviews the trial court's COLs de novo. A COL is not binding upon an appellate court and is freely reviewable for its correctness. Moreover, a COL that is supported by the trial court's FOFs and that reflects

its. *See Liki v. First Fire & Cas. Ins. of Hawaii, Inc.*, 118 Hawai'i 123, 126 n. 3, 185 P.3d 871, 874 n. 3 (App.2008).

7. Father also challenges FOF 3 on the basis that Hawai'i was the child's home state from 2005–2008. Father's argument is limited to the contention that the FOF is contrary to the evidence that Hawai'i was Daughter's home state. Father provides no further argument and includes no citations to where this purported evidence is located in the record or how it might affect the challenged FOF. Father's bare contention provides us with an insufficient basis upon which to evaluate whether FOF 3 is clearly erroneous.

8. Mother maintains that Father "PURPOSEFULLY AVOID[ED]" even the mention of HRS § 583A–206, so much so that Rule 11 sanctions may be in order for the frivolous nature of the legal argument...." We interpret Mother to refer to Hawai'i Rules of Civil Procedure ("HRCP") Rule 11. Father's argument, however, is premised on the fact that a different section

an application of the correct rule of law will not be overturned.

*Bhakta v. County of Maui*, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (internal quotation marks, citations, and brackets in original omitted).

*Doe v. Doe*, 120 Hawai'i 149, 164–65, 202 P.3d 610, 626–27 (App.2009) (brackets omitted).

## IV. DISCUSSION

### A. HRS § 583A–206.

The Uniform Act governs jurisdictional issues that arise in interstate child custody proceedings and is codified in Hawai'i in HRS chapter 583A. HAW.REV.STAT. § 583A–101 (2006). It was drafted by the National Conference of Commissioners on Uniform State Laws in 1997, and enacted by the Hawai'i Legislature in 2002. 2002 Haw. Sess. Laws Act 124, §§ 1 & 2 at 335–48.

On appeal, Father challenges COLs 10–20 of the FOF/COL,[7] in which the Family Court essentially concluded that Father's Motion for Sole Custody and Mother's Emergency Verified Petition constituted "simultaneous proceedings" under HRS § 583A–206 ("Section 206").[8] Father asserts that Hawai'i had exclusive, continuing jurisdiction over the child custody determination pursuant to HRS § 583A–202,[9] that Mother's subsequent relocation to Florida with Daughter did not af-

of HRS Chapter 583A applies, not Section 206. The argument is "non-frivolous" for purposes of HRCP Rule 11(b)(3). Although a citation to Section 206 may have clarified Father's second point of error, omitting it does not warrant sanctions and should not prevent this court from reviewing the merits of Father's arguments.

9. HRS § 583A–202 provides, in relevant part:

(a) Except as otherwise provided in section 583A–204, a court of this State which has made a child-custody determination consistent with section 583A–201 or 583A–203 has *exclusive, continuing jurisdiction over the determination until* :

(1) A court of this State determines that the child, the child's parents, *and* any person acting as a parent do not have a significant connection with this State *and* that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships[.]

HAW.REV.STAT § 583A–202(a)(1) (2006) (emphases added).

fect the jurisdiction of the Family Court, and that, therefore, Section 206 is inapplicable.

### 1. FOF3 appears to conflict with the Family Court's earlier assumption of jurisdiction.

A family court has jurisdiction to make an initial child-custody determination in certain limited circumstances. HRS § 583A–201 provides that:

**Initial child-custody jurisdiction.** (a) Except as otherwise provided in section 583A–204, a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under section 583A–207 or 583A–208, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

(B) Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground

that a court of this State is the more appropriate forum to determine the custody of the child under section 583A–207 or 583A–208; or

(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

(b) Subsection (a) shall be the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child shall not be necessary or sufficient to make a child-custody determination.

HAW.REV.STAT. § 583A–201 (2006).

The Family Court did not explain the basis for asserting, nor did either party contest the court's assertion of, jurisdiction to enter the initial custody orders-the November 13, 2007 Stipulated Judgment of Paternity and the January 3, 2008 Stipulated Joint Custody Order. Nevertheless, without apparently intending to contest the Family Court's initial assumption of jurisdiction, the parties do dispute whether Hawaiʻi was Daughter's home state between 2007 and 2008.

Resolution of the home state question could affect the Family Court's jurisdiction over the initial custody proceedings if Daughter's home state was the basis for the Family Court's jurisdiction. *See* HAW.REV.STAT. § 583A–201(a)(1) (providing jurisdiction where a state is the "home state of the child on the date of the commencement of the proceeding."). The parties offer no argument on this issue or any of the other potential bases for jurisdiction, *see* HAW.REV.STAT. § 583A–201(a)(2), (3), and (4), and there is nothing in the record apart from the Family Court's unexplained FOF 3 [10] to suggest that the Family Court did not have jurisdiction. Therefore, although the Family Court will need to consider the factual basis for its FOF 3 on remand,[11] that jurisdiction is unchallenged and at this point unreviewable here.

---

**10.** FOF 3 is unsupported by the transcript of the February 7, 2013, telephone call between the Florida court and the Family Court, and implicitly conflicts with the Family Court's earlier assumption of jurisdiction in the Stipulated Judgment of Paternity and the subsequent Stipulated Joint Custody Order.

**11.** Any revisitation of the Family Court's initial determination of jurisdiction at this point must consider the principles of judicial economy and judicial finality as outlined, in an analogous situation, in *Cvitanovich–Dubie v. Dubie,* 125 Hawaiʻi 128, 141, 254 P.3d 439, 452 (2011).

Therefore, we proceed to consider whether, if jurisdiction was properly first assumed, the Family Court's subsequent decision to decline jurisdiction was proper.

2. Assuming that the Family Court properly exercised initial jurisdiction, it thereafter had exclusive, continuing jurisdiction over the child-custody proceedings.

Pursuant to the Uniform Act, the State which has properly made an initial "child-custody determination" [12] continues to have exclusive, original jurisdiction over that determination. HAW.REV.STAT. § 583A–202. Thus, assuming as we do here that the Family Court properly made the initial child-custody determination several years before the Florida court became involved, Hawai'i continued to have "exclusive, continuing jurisdiction" over any attempt to modify the original orders as to legal and physical custody. HAW.REV.STAT. §§ 583A–202(a)(1) and (2). This jurisdiction would continue until the Family Court explicitly declined jurisdiction or none of the parties remained in Hawai'i. See Beam v. Beam, 126 Hawai'i 58, 60–61, 266 P.3d 466, 468–69 (App.2011) ("When a Hawai'i court properly asserts jurisdiction and makes an initial child custody determination, that court retains 'exclusive, continuing jurisdiction over the determination.'" (quoting HRS § 583A–202)).

3. Section 206, addressing simultaneous proceedings, did not apply.

It is apparent from the challenged COLs that the Family Court in this instance declined jurisdiction over the custody proceed-

ings on the basis of Section 206. That provision states, in relevant part:

(a) Except as otherwise provided in section 583A–204, a court of this State shall not exercise its jurisdiction under this part if, *at the time of the commencement of the proceeding,* a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, *unless the proceeding has been terminated or is stayed by the court of the other state because a court of this State is a more convenient forum under section 583A–207.*

HAW.REV.STAT. § 583A–206(a) (2006) (emphases added).

■ This provision is not applicable in the instant case for two reasons. First, it is not applicable where there is a State with already-established, exclusive, continuing jurisdiction. The comment to section 206 of the Uniform Act provides that "[u]nder this Act, the simultaneous proceedings problem will arise only when there is no home State, no State with exclusive, continuing jurisdiction and more than one significant connection State." Uniform Act § 206 cmt. (1997).[13] It notes that "[i]f there is a State of exclusive, continuing jurisdiction, there cannot be another State with concurrent jurisdiction, and therefore, no simultaneous proceedings." [14] *Id.* As established, it is uncontested that Hawai'i had exclusive, continuing jurisdiction over the child-custody proceedings in this case. Therefore, the simultaneous proceed-

---

12. "Child-custody determination" is defined as "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual." HAW.REV STAT. § 583A–102 (2006).

13. The text of the Uniform Act, including comments, is available at www.uniformlaws.org/ shared/docs/child_custody_jurisdiction/uccjea_ final_97.pdf

14. The cases cited by Mother in her answering brief are either distinguishable, or else serve only to support this conclusion. *See Crook v. Fujino,*

No. 29965, 2009 WL 2477527, at *1 (Haw. Aug. 7, 2009) (holding that HRS § 583A–206 did not apply because the other state did not have jurisdiction in conformity with the Uniform Act); *SW v. Duncan,* 24 P.3d 846 (Okla.2001) (court properly made initial custody determination, and thus could proceed with custody modification despite the fact that a Kansas modification proceeding on the same custody matter had commenced prior to the Oklahoma modification proceeding); *Malissa C. v. Matthew Wayne H.,* 145 N.M. 22, 193 P.3d 569, 575 (N.M.Ct.App.2008) (holding that simultaneous proceedings provision did not apply because other state did not have "jurisdiction substantially in conformity" with the Uniform Act).

ings section of the Uniform Act does not apply.

Second, even if we were to ignore Hawai'i's exclusive, continuing jurisdiction on the basis of the Petition for Paternity, and if we were to assume for the sake of argument that there was concurrent jurisdiction with Florida over the subsequent custody proceedings, section 206 of the Uniform Act contains a "first in time" rule. *See id.* That is, the State in which the proceeding is commenced *first* will exercise jurisdiction, unless it declines to do so because of inconvenient forum. The plain language of HRS § 583A–206 provides that where, *"at the time of the commencement* [15] *of the proceeding [in State A* ], a proceeding concerning the custody of the child has been commenced in a court of another state [ (State B) ]," State A may not exercise jurisdiction unless State B declines to do so. HAW.REV.STAT. § 583A–206(a) (emphasis added).

In this case, the parties do not dispute that the custody proceedings commenced first in Hawai'i when Father filed his Motion for Sole Custody in the Family Court. Thus, Hawai'i is "State B" in the quoted excerpt above. Therefore, when Mother filed her Emergency Verified Petition in the Florida court, Florida became "State A", because the proceedings there were commenced second in time. Accordingly, pursuant to the simultaneous proceedings provision, Florida could not have exercised jurisdiction unless Hawai'i first declined because it determined that Florida was a more convenient forum. *Id.* Thus, the Family Court's COLs 10–20 were incorrect because Section 206 was not relevant to the proceedings.

### B.   HRS § 583A–207

In the alternative, and despite the language of COLs 10–20, the Family Court's determination could be construed as an "inconvenient forum" determination made pursuant to HRS § 583A–207 ("Section 207"). The Florida court mentioned "the issue of forum non conveniens" during the conference call, and, in its COL 20, the Family Court

characterized its decision as "declin[ing] jurisdiction."

Assuming that the Family Court properly declined jurisdiction as an "inconvenient forum", and dismissed the action, Florida could proceed pursuant to the Uniform Act. *See* Uniform Act § 202 cmt. (1997) ("[T]he State with exclusive, continuing jurisdiction may relinquish jurisdiction when it determines that another State would be a more convenient forum under the principles of Section 207.").

Section 207 provides, in pertinent part, that:

(a) A court of this State which has jurisdiction under this chapter to make a child-custody determination *may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.* The issue of inconvenient forum may be raised upon the motion of a party, the court's own motion, or request of another court.

(b) *Before determining whether it is an inconvenient forum,* a court of this State *shall consider* whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court *shall allow the parties to submit information and shall consider all relevant factors,* including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this State;

(3) The distance between the court in this State and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

HAW.REV.STAT. § 583A–102.

**15.** " 'Commencement' means the filing of the first pleading in a child custody proceeding."

(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation; and

(9) The physical and psychological health of the parties.

(c) If a court of this State determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

HAW.REV.STAT. § 583A–207(a)–(c) (2006) (emphasis added).

A family court's decision to decline jurisdiction is reviewed for abuse of discretion. *See Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (" '[An appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.' " (quoting *In re Doe*, 95 Hawai'i 183, 189–90, 20 P.3d 616, 622–23 (2001))).

The language of Section 207 states that a court "shall consider all relevant factors" and "allow the parties to submit information". HAW.REV.STAT. § 583A–207(b). Numerous other jurisdictions have held that where a court declines jurisdiction without considering all of the statutory factors in its equivalent of subsection (b) of Section 207, or allowing the parties to present facts or arguments, it constitutes an abuse of discretion.[16] *See, e.g., Cole v. Cushman*, 946 A.2d 430, 435 (Me.2008) (court abused its discretion because it did not consider the factors listed in Maine's equivalent of subsection (b) of Sec-

tion 207); *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24, 34 (2006) ("After a court of this state has declined to exercise its jurisdiction under the [Uniform Act], the objecting party is entitled to know that the trial court has engaged in a proper consideration of 'all relevant factors' and to a record that allows for meaningful appellate review."); *In re Custody of N.G.H.*, 322 Mont. 20, 92 P.3d 1215, 1218 (2004) (reversing the lower court's determination not to exercise jurisdiction because it failed to consider the factors under Montana's version of the Uniform Act); *Harris v. Harris*, 922 N.E.2d 626, 640 (Ind.Ct. App.2010) (court's failure to allow the parties to present arguments on inconvenient forum was reversible error).

Here, the Family Court did not make findings as to any of the statutory factors in Section 207, but simply stated that it "properly and correctly, after communicating with the Florida court, declined jurisdiction in this matter." Irrespective of the theory under which the Family Court proceeded, in light of the court's failure to make any Section 207–related findings, and the apparent inconsistency between FOF 3 and the court's earlier assumption of jurisdiction, we cannot properly determine whether the court abused its discretion in declining jurisdiction.

## V. CONCLUSION

For the foregoing reasons, we vacate that portion of the February 19, 2013 Record of Communication stating that "Hawaii declines jurisdiction[,]" and the May 28, 2013 Findings of Fact and Conclusions of Law in its entirety. The case is remanded for proceedings consistent with this opinion.

Because it is not apparent from the record what proceedings have occurred in Florida subsequent to the Family Court's entrance of the February 19, 2013 Order Setting Aside Hearing Date and Record of Communication, the Family Court should defer ruling on Father's previous motions, including his Motion for Sole Custody, pending a new deter-

---

**16.** Inasmuch as we address the application of a uniform act, the application by other jurisdictions is instructive. HRS § 1–24 provides that "[a]ll provisions of uniform acts adopted by the State shall be so interpreted and construed as to effectuate their general purpose to make uniform the laws of the states and territories which enact them." HAW REV.STAT. § 1–24 (2009 Repl.).

mination on remand by the Family Court as to whether it should decline jurisdiction pursuant to Section 207 in favor of Florida. In addition, in order to avoid inconsistent custody orders, the Family Court should consider entry of an interim custody order consistent with any custody modification that has taken place in Florida, pending the outcome of those determinations.