FILED

December 11 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0203

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 332

GAYLE PINNOW,

      Claimant and Appellant,

  v.

MONTANA STATE FUND,

      Respondent and Appellee,

  and

HALVERSON, SHEEHY & PLATH, P.C.,

      Intervenor and Appellee.

APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2004-1190
                 Honorable Mike McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Roy W. Johnson, Attorney at Law, Billings, Montana

      For Respondent:

           Michael P. Heringer, William A. D'Alton, Brown Law Firm,
           Billings, Montana

      For Intervenor:

           Victor R. Halverson, Halverson, Sheehy & Plath, Billings, Montana

Submitted on Briefs:  November 28, 2007

Decided:  December 11, 2007

Filed:

_____

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Gayle Pinnow appeals from an order of the Workers' Compensation Court ("WCC") granting summary judgment in favor of respondent Montana State Fund ("MSF") and intervenor Halverson, Sheehy & Plath, P.C. ("Halverson"). We reverse.

¶2      The issues on appeal are as follows:

1. Did District Court Judge Sherlock have authority to assume jurisdiction over this case and sit in place of WCC Judge McCarter following Judge McCarter's recusal?

2. Did the WCC err by not referring Pinnow and Halverson's dispute regarding attorney's fees to the Montana Department of Labor and Industry for a hearing?

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      On May 24, 2004, Pinnow retained R. Russell Plath as her attorney and executed an Attorney Retainer Agreement. The Attorney Retainer Agreement was the standard agreement prepared by the Montana Department of Labor and Industry ("DOLI") for use by attorneys representing claimants having workers' compensation claims. It provided for a twenty-percent contingency fee on settled claims. The DOLI approved the Attorney Retainer Agreement on June 4, 2004.

¶4      On November 15, 2004, Plath (on Pinnow's behalf) filed a Petition for Hearing in the WCC, naming MSF as respondent. The petition pertained to two occupational disease claims previously filed by Pinnow, the first involving bilateral carpal tunnel syndrome and the second involving a shoulder injury. Pinnow had asked MSF to pay for additional surgeries and pain management, but MSF had refused. Thus, she requested in

3

her petition that the WCC require MSF to furnish her with reasonable primary medical services.

¶5    On February 17, 2005, Pinnow, Plath, and counsel for MSF signed a stipulation for settlement. MSF agreed to pay $125,000 to settle both of Pinnow's claims. The WCC approved and adopted the settlement on February 22, 2005, and dismissed the case with prejudice.

¶6    On March 10 and April 1, 2005, however, Pinnow wrote letters to the WCC indicating that she was repudiating the settlement and requesting that Plath receive no attorney's fees. Pinnow stated that she had been coerced into signing the settlement stipulation, that she was dyslexic and did not understand the terms of the settlement stipulation, and that the details of the settlement had not been fully disclosed to her. Apparently, Pinnow believed that she was settling only her shoulder claim, not both claims.

¶7    In another letter addressed to the WCC, dated April 14, 2005, Pinnow explained the basis of her dispute with Plath's representation as follows:

> Mr. Plath unethically withheld from me, and lied to me about information regarding my claim. . . . As a result of Mr. Plath's actions and decisions to act as he did, I feel that he did not represent me to the best of his ability, and with my best interest in mind, therefore negating any kind of compensation due according to our agreement.

Pinnow asked the WCC to "order no fees are paid for services. [Plath] doesn't deserve it."

¶8    On April 20, 2005, the WCC held a telephone conference with Pinnow, Plath, and counsel for MSF to discuss the disposition of the settlement checks and Pinnow's

4

correspondence with the court regarding Plath's entitlement to attorney's fees. Plath made a motion to withdraw as Pinnow's counsel, which the court granted. Furthermore, the WCC ordered MSF to retain the settlement checks until Pinnow decided how she wanted to proceed. As for the attorney's fees dispute, the WCC informed Pinnow that the court has limited jurisdiction regarding attorney's fees and that it would have to be determined whether her complaints fell within that jurisdiction. Ultimately, the court stated that it would treat Pinnow's correspondence as "a petition disputing the attorney fees" and would open a new case file. In a letter to the WCC dated April 26, 2005, Pinnow stated that she had decided to reject the terms of the settlement agreement.

¶9 On May 2, 2005, the WCC Judge, the Honorable Mike McCarter, issued an order stating that he had deemed himself disqualified and requesting that the Honorable Jeffrey M. Sherlock, District Judge of the First Judicial District Court, assume jurisdiction over the matter. On May 3, 2005, Judge Sherlock issued an order granting Judge McCarter's request. He purported to act as the WCC judge through the final resolution of this case. We note that although the original case (No. 2004-1190) had been dismissed by Judge McCarter "with prejudice" on February 22, 2005, when he approved and adopted the parties' stipulation for settlement, a new case file related to Pinnow's repudiation of the settlement agreement and her dispute regarding attorney's fees was not opened. Rather, the case proceeded under the original cause number.

¶10 MSF filed a motion for summary judgment on November 10, 2005, arguing that the settlement stipulation was a valid contract, that the language of the settlement stipulation was clear and unambiguous and should be enforced as written, and that there

was no evidence demonstrating that Pinnow was dyslexic or in any way incapable of understanding the terms of the settlement. On or about November 22, 2005, Pinnow informed Judge Sherlock that she had changed her mind and was withdrawing her objections to the stipulated settlement; however, she told Judge Sherlock explicitly that she was maintaining her dispute as to whether Plath should receive attorney's fees. At this point in time, the only named respondent in the case was MSF; however, on November 30, 2005, Halverson filed a motion to intervene in the action, which Judge Sherlock granted. Meanwhile, MSF filed a motion requesting direction from Judge Sherlock regarding the settlement checks and the attorney's fees.

¶11    Pinnow (proceeding pro se) and Halverson thereafter filed cross-motions for summary judgment on the issue of attorney's fees. On February 24, 2006, Judge Sherlock granted summary judgment in favor of both MSF and Halverson and denied Pinnow's motion for summary judgment. He enforced the settlement stipulation and also held that the twenty-percent contingency fee arrangement in the Attorney Retainer Agreement was reasonable and that Halverson was entitled to attorney's fees. He ordered MSF to pay Halverson $25,000.00 in attorney's fees plus costs of $1,906.04. MSF thereafter paid the attorney's fees and costs, in full, to Halverson.

¶12    Pinnow now appeals from Judge Sherlock's February 24, 2006 Order on Cross-Motions for Summary Judgment.

## STANDARD OF REVIEW

¶13    Our standard of review of the WCC's ruling on a motion for summary judgment is de novo. *Mathews v. BJS Construction, Inc.*, 2003 MT 116, ¶ 12, 315 Mont. 441, ¶ 12,

68 P.3d 865, ¶ 12; *Otteson v. Montana State Fund*, 2005 MT 198, ¶ 8, 328 Mont. 174, ¶ 8, 119 P.3d 1188, ¶ 8.  We determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law.  *Otteson*, ¶ 8.  Whether a court has jurisdiction over the parties or the subject matter is a legal conclusion, which we review de novo.  *See Stanley v. Lemire*, 2006 MT 304, ¶ 52, 334 Mont. 489, ¶ 52, 148 P.3d 643, ¶ 52.

## DISCUSSION

¶14    ***Issue 1. Did District Court Judge Sherlock have authority to assume jurisdiction over this case and sit in place of WCC Judge McCarter following Judge McCarter's recusal?***

¶15    Pinnow, Halverson, and MSF address whether the WCC has authority to hear and decide the parties' dispute regarding attorney's fees (which we address under Issue 2, *infra*).  However, none of them addresses whether District Judge Sherlock had authority to assume jurisdiction over this case and sit in place of WCC Judge McCarter following McCarter's recusal.  Generally, we do not address issues not raised by the parties.  *See In re Parenting of D.A.H.*, 2005 MT 68, ¶ 7, 326 Mont. 296, ¶ 7, 109 P.3d 247, ¶ 7 ("As a general rule, we decline to address on appeal an issue not raised by the parties before the District Court." (citing *Armstrong v. State*, 1999 MT 261, ¶ 4, 296 Mont. 361, ¶ 4, 989 P.2d 364, ¶ 4, and *Mortgage Source, Inc. v. Strong*, 2003 MT 205, ¶ 14, 317 Mont. 37, ¶ 14, 75 P.3d 304, ¶ 14)).  Nevertheless, for the reasons which follow, it is necessary that we address this question sua sponte.

¶16    As we explained in *Stanley*, jurisdiction involves the fundamental power and authority of a court to hear and decide an issue.  *Stanley*, ¶ 30.  As such, jurisdictional

issues " 'transcend procedural considerations.' " *Stanley*, ¶ 31 (quoting *Thompson v. Crow Tribe of Indians*, 1998 MT 161, ¶ 12, 289 Mont. 358, ¶ 12, 962 P.2d 577, ¶ 12). Indeed, " 'lack of jurisdiction over the subject matter can be raised at any time and a court which in fact lacks such jurisdiction cannot acquire it even by consent of the parties.' " *Stanley*, ¶ 31 (quoting *Corban v. Corban*, 161 Mont. 93, 96, 504 P.2d 985, 987 (1972)). Moreover, we observed in *Stanley* that " 'courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.' " *Stanley*, ¶ 32 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006)); *see also State v. Reeder*, 2004 MT 244, ¶ 4, 323 Mont. 15, ¶ 4, 97 P.3d 1104, ¶ 4.

¶17 In the case at hand, if Judge Sherlock did not have authority to sit in place of Judge McCarter and hear this case, this case has, in essence, been idle since May 3, 2005, when Judge McCarter recused himself and Judge Sherlock purported to assume jurisdiction, and all actions taken by Judge Sherlock are void. Accordingly, we will proceed, sua sponte, to address the question of whether Judge Sherlock had authority to assume jurisdiction over this case following Judge McCarter's recusal.

¶18 We begin by noting that neither Title 39, Chapter 71, MCA (which sets forth the powers of the WCC) nor any other provision of the Code pertaining to district court judges and the WCC provides for a district court judge to substitute for the WCC judge upon recusal. One plausible source of such authority is § 3-1-804, MCA, which provides for the substitution of district court judges; however, this provision specifically excludes the WCC. It states as follows: "This section is limited in its application to district courts

8

and judges presiding therein; it does not include district court judges or other judges sitting as a water court judge, *nor a Workers' Compensation Court judge.*" Section 3-1-804, MCA (emphasis added). Given this language, this statute implicitly prohibits the substitution of a district court judge for the WCC judge. Furthermore, we note that while the Legislature has provided that a district court judge may be designated to fill the role of water judge, *see* § 3-7-201(2), MCA, it has not likewise provided that a district court judge may be designated to fill the role of WCC judge. Accordingly, § 3-1-804, MCA, did not authorize the transfer of this case to Judge Sherlock.

¶19    Given that the WCC is allocated by § 2-15-1707(1), MCA, to the DOLI, another plausible source of authority for a district court judge to substitute for the WCC judge is § 39-71-203, MCA, which authorizes the DOLI "to do and perform any and all things that are necessary or convenient in the exercise of any power, authority, or jurisdiction conferred upon it under this chapter." However, this provision merely authorizes the DOLI to do and perform things that are necessary or convenient in the exercise of jurisdiction conferred elsewhere under Title 39, Chapter 71, MCA. Section 39-71-203, MCA, is not itself an independent source of subject-matter jurisdiction.

¶20    In this regard, we note that the Administrative Rules of Montana provide for a district court judge to sit in place of the WCC judge. Specifically, Admin. R. M. 24.5.313(1) states: "In all cases in which the workers' compensation judge recuses himself or herself, the judge shall designate and call in a sitting or retired district judge to preside over the cause." However, jurisdiction is conferred on courts only by the Constitution or statutes adopted pursuant to the Constitution. *Stanley*, ¶ 52 (citing *State*

9

*v. Osborne*, 2005 MT 264, ¶ 12, 329 Mont. 95, ¶ 12, 124 P.3d 1085, ¶ 12, in turn citing *State ex rel. Johnson v. District Court*, 147 Mont. 263, 266, 410 P.2d 933, 935 (1966)). Thus, Admin. R. M. 24.5.313(1) is not itself a source of authority by which a district court judge may assume jurisdiction over a case in the WCC. And while Admin. R. M. 24.5.313 purports to implement §§ 2-4-201 and 39-71-2901, MCA, neither § 2-4-201, MCA, nor § 39-71-2901, MCA, are authority for this administrative rule.

¶21 Section 2-4-201, MCA—a provision of the Montana Administrative Procedure Act, §§ 2-4-101 to -711, MCA—merely states:

> In addition to other rulemaking requirements imposed by law, each agency shall:
> (1) adopt as a rule a description of its organization, stating the general course and method of its operations and the methods whereby the public may obtain information or make submissions or requests. The notice and hearing requirements contained in 2-4-302 do not apply to adoption of a rule relating to a description of its organization.
> (2) adopt rules of practice, not inconsistent with statutory provisions, setting forth the nature and requirements of all formal and informal procedures available, including a description of all forms and instructions used by the agency.

This is not authority for the transfer of jurisdiction from the WCC judge to a district court judge.

¶22 Section 39-71-2901, MCA, in turn, provides:

> (1) The principal office of the workers' compensation judge shall be in the city of Helena.
> (2) The workers' compensation court has power to:
> (a) preserve and enforce order in its immediate presence;
> (b) provide for the orderly conduct of proceedings before it and its officers;
> (c) compel obedience to its judgments, orders, and process in the same manner and by the same procedures as in civil actions in district court;

(d) compel the attendance of persons to testify; and

(e) punish for contempt in the same manner and by the same procedures as in district court.

This also is not authority for the transfer of jurisdiction from the WCC judge to a district court judge.

¶23 Thus, while the Administrative Rules purport to fill a gaping hole left by the Legislature, the transfer provision set forth in Admin. R. M. 24.5.313(1) simply cannot create authority not otherwise provided for by the Constitution or statutes adopted pursuant to the Constitution. In other words, Admin. R. M. 24.5.313(1) is not authority by which a district court judge may assume subject-matter jurisdiction over a case in the WCC.[1]

¶24 We addressed a similar issue in *Potter v. District Court*, 266 Mont. 384, 880 P.2d 1319 (1994). In *Potter*, we stated that unless the procedures for authorizing and calling in a substitute justice of the peace (*see* § 3-10-231, MCA) are followed, then no substitute justice is appointed and "the person seeking to exercise the powers of a judge as his substitute has no authority or jurisdiction to do so." *Potter*, 266 Mont. at 393, 880 P.2d at 1325. "That person is, quite simply, not a judge" and has no more authority than "any

_____

[1] As an aside, we note that it would be unsupportable to hold that an administrative agency had the power to create or divest courts of subject-matter jurisdiction or to create rules for the courts. Section 2-15-1707(1), MCA, states that "[t]he office [of workers' compensation judge] is allocated to the department of labor and industry *for administrative purposes only as prescribed in 2-15-121*" (emphasis added). Section 2-15-121(1)(a), MCA, in turn, states that "[a]n agency allocated to a department for administrative purposes only in this chapter shall . . . exercise its quasi-judicial . . . functions independently of the department and *without approval or control of the department*" (emphasis added, paragraph break omitted). Therefore, the Legislature has provided that the DOLI shall not make rules for or otherwise control the WCC.

other member of the general public." *Potter*, 266 Mont. at 393, 880 P.2d at 1325; *accord State v. Vickers*, 1998 MT 201, ¶ 25, 290 Mont. 356, ¶ 25, 964 P.2d 756, ¶ 25.

¶25     Likewise, in the case at hand, Judge Sherlock was, quite simply, not the WCC judge; he had no more authority than any other member of the general public over this case.  Thus, all proceedings conducted and all orders issued by Judge Sherlock are of no legal effect.  This case has, for all intents and purposes, been idle since May 3, 2005, when Judge McCarter recused himself.  We therefore vacate all orders entered in this case by Judge Sherlock.

¶26     ***Issue 2. Did the WCC err by not referring Pinnow and Halverson's dispute regarding attorney's fees to the DOLI for a hearing?***

¶27     Given the foregoing conclusion, it is necessary to remand this case to the WCC for the Honorable James Jeremiah Shea, Workers' Compensation Court Judge, to preside over all of the issues purportedly resolved by Judge Sherlock.  Before doing so, however, we must address Pinnow's contention that the WCC lacks authority to resolve the parties' dispute regarding Halverson's entitlement to attorney's fees.

¶28     Pinnow contends that pursuant to Admin. R. M. 24.29.3802(9), the WCC was required to transfer the attorney's fees dispute to the DOLI for resolution.  Admin. R. M. 24.29.3802(9) states as follows:

> In the event a dispute arises between any claimant and an attorney relative to attorney's fees in a workers' compensation claim, upon request of either the claimant or the attorney or upon notice of any party of a violation of 39-71-613, MCA, or this rule, the administrator or his designee shall review the matter and issue his order resolving the dispute pursuant to procedures set forth in ARM 24.29.201, et seq.

Admin. R. M. 24.29.201 to .215, in turn, set forth procedural rules.

¶29 Yet, although Admin. R. M. 24.29.3802(9) does provide, on its face, for the DOLI to review and resolve "a dispute . . . between any claimant and an attorney relative to attorney's fees in a workers' compensation claim," we have explained under Issue 1 that an administrative agency does not have the power to create or divest a court of subject-matter jurisdiction. *See* ¶¶ 20, 23, *supra*. Furthermore, the Legislature has provided in §§ 2-15-1707(1) and -121(1)(a), MCA, that the DOLI shall *not* make rules for or otherwise control the WCC. *See* ¶ 23 n. 1, *supra*. Thus, to the extent that Admin. R. M. 24.29.3802(9) attempts *of its own accord* to divest the WCC of jurisdiction over "a dispute . . . between any claimant and an attorney relative to attorney's fees in a workers' compensation claim," the provision is ineffective.

¶30 We observe that Admin. R. M. 24.29.3802 purports to implement statutory provisions. Specifically, Admin. R. M. 24.29.3802(1) states that "[t]his rule is promulgated under the authority of 39-71-203 and 39-71-613, MCA, to implement regulation of the fees charged to claimants by attorneys in workers' compensation cases as provided in 39-71-613, MCA." However, neither § 39-71-203 nor § 39-71-613 confers jurisdiction on the DOLI to resolve disputes over entitlement to attorney's fees.

¶31 Section 39-71-203, MCA, authorizes the DOLI "to do and perform any and all things that are necessary or convenient in the exercise of any power, authority, or jurisdiction conferred upon it under this chapter." However, as explained above, this provision merely authorizes the DOLI to do and perform things that are necessary or convenient in the exercise of jurisdiction conferred elsewhere under Title 39, Chapter 71,

13

MCA. Section 39-71-203, MCA, is not itself an independent source of subject-matter jurisdiction.

¶32 As for § 39-71-613, MCA, this statute provides, in its entirety, as follows:

(1) When an attorney represents or acts on behalf of a claimant or any other party on any workers' compensation claim, the attorney shall submit to the department a contract of employment, on a form provided by the department, stating specifically the terms of the fee arrangement between the attorney and the claimant.
(2) The department may regulate the amount of the attorney fees in any workers' compensation case. In regulating the amount of the fees, the department shall consider:
(a) the benefits the claimant gained due to the efforts of the attorney;
(b) the time the attorney was required to spend on the case;
(c) the complexity of the case; and
(d) any other relevant matter the department may consider appropriate.
(3) An attorney who violates a provision of this section, a rule adopted under this section, or an order fixing attorney fees under this section forfeits the right to any fees that the attorney collected or was entitled to collect.
(4) If, after an attorney receives attorney fees and costs assessed against an insurer, the claimant is convicted of having obtained benefits through fraud or deception, the attorney fees and costs for obtaining the benefits must be returned to the insurer by the attorney.
(5) A dispute concerning the forfeiture or return of attorney fees is considered a dispute for which the workers' compensation court has original jurisdiction and is not subject to mediation or a contested case hearing.

¶33 Nothing in this statute confers jurisdiction on the DOLI to resolve attorney's fees disputes. Moreover, Admin. R. M. 24.29.3802(9) actually conflicts with the statute. Subsections (3) and (5) of § 39-71-613, MCA, provide for original jurisdiction *in the WCC* where an attorney has violated a provision of § 39-71-613, a rule adopted under § 39-71-613, or an order fixing attorney's fees under § 39-71-613. Therefore, "upon

14

notice of any party of a violation of 39-71-613, MCA" (*see* Admin. R. M. 24.29.3802(9)), the WCC—not the DOLI—has jurisdiction over the dispute.

¶34 Finally, this Court stated in *Kelleher Law Office v. State Comp. Ins. Fund*, 213 Mont. 412, 691 P.2d 823 (1984), that "whenever the dispute is related to workers' compensation benefits payable to a claimant, the jurisdiction of the Workers' Compensation Court goes beyond merely providing a forum for adjudicating workers' claims." *Kelleher*, 213 Mont. at 415, 691 P.2d at 824 (citing *State ex rel. Uninsured Employers' Fund v. Hunt*, 191 Mont. 514, 625 P.2d 539 (1981)). We held that "payment of attorney's fees and related costs," therefore, falls within the jurisdictional grant contained in § 39-71-2905, MCA. *See Kelleher*, 213 Mont. at 415, 691 P.2d at 824-25.[2]

¶35 For the foregoing reasons, we reject Pinnow's contention that the WCC was required to transfer the parties' dispute over attorney's fees to the DOLI for resolution. We hold that the WCC may, on remand, hear and decide the question of Halverson's entitlement to the attorney's fees (which have already been paid by MSF).

## CONCLUSION

---

[2] In this regard, we note that in responding to Pinnow's contention that the WCC lacks authority to resolve the parties' dispute over attorney's fees, Halverson relies on § 39-71-613(5), MCA. However, § 39-71-613(5) does not confer jurisdiction on the WCC to resolve the particular attorney's fees dispute in this case, since that dispute is not "[a] dispute concerning the forfeiture or return of attorney fees." *See* § 39-71-613(3), MCA (providing for the forfeiture of attorney's fees if the attorney violates a provision of § 39-71-613, a rule adopted under § 39-71-613, or an order fixing attorney's fees under § 39-71-613, none of which have been alleged here); § 39-71-613(4), MCA (providing for the return of attorney's fees to the insurer if the claimant is convicted of having obtained benefits through fraud or deception, which also has not been alleged here). Rather, pursuant to our decision in *Kelleher*, the WCC's jurisdiction over the parties' attorney's fees dispute derives from § 39-71-2905, MCA; and Halverson's reliance on § 39-71-613(5), MCA, therefore, is misplaced.

15

¶36 District Judge Sherlock was not authorized by any provision of law to assume jurisdiction over this case. Thus, this case has, for all intents and purposes, been idle since May 3, 2005, when WCC Judge McCarter recused himself, and all orders issued by Judge Sherlock are void.

¶37 We appreciate that this Opinion addresses important practice and procedure problems inherent in the statutory scheme that created and sets forth the powers of the WCC. That said, the role of the judge is simply to ascertain and declare what is in terms or in substance contained in those statutes, neither inserting what has been omitted nor omitting what has been inserted. Section 1-2-101, MCA. And, while it is obvious from our Opinion that there are some gaping holes in the statutory scheme discussed under Issue 1, it is the province of the Legislature, not this Court, to remedy those. To insure the proper and efficient functioning of the WCC, we respectfully urge the Legislature to do so.

¶38 The Order on Cross-Motions for Summary Judgment and all other orders entered by Judge Sherlock are vacated. This case is remanded to the WCC to open a new case file related to Pinnow's dispute with Halverson regarding attorney's fees and for further proceedings not inconsistent with this Opinion.

¶39 Reversed.

/S/ JAMES C. NELSON

16

We Concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice James C. Nelson, specially concurring.

¶40　I believe that the Court's Opinion correctly resolves the issues in this case under the law as it presently stands. With respect to Issue 2, however, though the result we reach is in line with existing precedent, I question whether that precedent is correct, particularly in view of recent decisions of this Court.

¶41　Jurisdiction involves the fundamental power and authority of a court to hear and decide an issue. *Stanley v. Lemire*, 2006 MT 304, ¶ 30, 334 Mont. 489, ¶ 30, 148 P.3d 643, ¶ 30. Jurisdiction cannot be forfeited, waived, or conferred by the consent of the parties. *Miller v. District Court*, 2007 MT 149, ¶ 44, 337 Mont. 488, ¶ 44, 162 P.3d 121, ¶ 44. Rather, jurisdiction is conferred on the courts only by the Constitution or statutes adopted pursuant to the Constitution. *Stanley*, ¶ 52.

¶42　Unlike the district courts, which have jurisdiction in all civil matters and cases at law and in equity, *see* Mont. Const. art. VII, § 4(1), the WCC is a court of *limited* jurisdiction created by the Legislature under Article VII, Section 1 of the Montana Constitution, *see Oberson v. Federated Mut. Ins. Co.*, 2005 MT 329, ¶ 11, 330 Mont. 1, ¶ 11, 126 P.3d 459, ¶ 11. More specifically, the WCC is an administrative tribunal

17

governed by the Montana Administrative Procedure Act ("MAPA"; §§ 2-4-101 to -711, MCA). *See* § 39-71-2903, MCA; *see also Kloepfer v. Lumbermens Mut. Cas. Co.*, 272 Mont. 78, 81, 899 P.2d 1081, 1083 (1995); *Wheeler v. Carlson Transport*, 217 Mont. 254, 263, 704 P.2d 49, 55 (1985); *Hert v. J. J. Newberry Co.*, 179 Mont. 160, 161-62, 587 P.2d 11, 12 (1978).

¶43   Courts of limited jurisdiction have only such power as is expressly conferred by statute. *Thompson v. State*, 2007 MT 185, ¶ 24, 338 Mont. 511, ¶ 24, 167 P.3d 867, ¶ 24 (citing *Jenkins v. Carroll*, 42 Mont. 302, 312, 112 P. 1064, 1069 (1910)). Accordingly, in determining whether the WCC has jurisdiction to hear and decide an issue, our starting premise is that the WCC does *not* have the jurisdiction in question unless that jurisdiction is expressly conferred by a specific provision of law. *See Thompson*, ¶ 24 n. 4. Translated to the case at hand, the WCC does not have jurisdiction to hear and decide the issue of Halverson's entitlement to attorney's fees—i.e., whether Plath adequately represented Pinnow in her dispute with MSF—unless that jurisdiction is expressly conferred by a specific provision of law.

¶44   Given this premise, I have scoured Title 3, MCA; Title 39, Chapter 71, MCA; and MAPA. I have found no provision expressly conferring jurisdiction on the WCC to hear and decide a dispute between a workers' compensation claimant and her attorney over whether the attorney has provided adequate representation and is entitled to the attorney's fees agreed to in the retainer agreement. Halverson cites no such provision either. (As noted in ¶ 34 n. 2 of the Court's Opinion, Halverson's reliance on § 39-71-613(5), MCA, is misplaced.) Thus, it appears that such a dispute must be brought in a district court.

¶45 Notwithstanding, this Court held in *Kelleher Law Office v. State Comp. Ins. Fund*, 213 Mont. 412, 691 P.2d 823 (1984), that the WCC's jurisdiction "includes payment of attorney's fees and related costs." *Kelleher*, 213 Mont. at 415, 691 P.2d at 825. The reasoning underlying this holding, however, was not based on any express statutory grant of such jurisdiction. As a matter of fact, one of the holdings in the case was reached, as admitted by the author of the opinion, "[b]y judicial fiat," *see Kelleher*, 213 Mont. at 416, 691 P.2d at 825; *see also Kelleher*, 213 Mont. at 418-19, 691 P.2d at 826 (Weber, J., dissenting), and I submit that the holding with respect to the WCC's jurisdiction over the attorney's fees dispute in *Kelleher* was also reached "by judicial fiat."

¶46 Timothy Richards was injured in 1982, and his employer's insurer, the State Compensation Insurance Fund, denied his claim. Thus, Richards retained the Kelleher Law Office to represent him. Richards and Kelleher entered into a contingency agreement entitling Kelleher to 25 percent of the amount recovered. Thereafter, Kelleher negotiated a settlement with the Fund on Richards' behalf. As a result, Kelleher was entitled to $290.62 in attorney's fees and $32.70 in costs. However, the Fund sent the state warrant (which did not list Kelleher's name as a payee) directly to Richards, who in turn left the state without paying Kelleher. Kelleher then made a demand on the Fund for the attorney's fees and costs, but the Fund denied liability. Thus, Kelleher filed an action against the Fund in the WCC, requesting an order directing the Fund to pay the attorney's fees and costs. In addition, Kelleher requested a declaratory ruling that the Fund must list the attorney's name as payee on all compensation drafts. *See Kelleher*, 213 Mont. at 414, 691 P.2d at 824.

¶47 In concluding that the WCC had jurisdiction over this action—which, aside from the request for a declaratory ruling, was in substance a negligence action—the *Kelleher* majority reasoned that the WCC "was granted broad jurisdictional powers by the unequivocal language of this Court" in *State ex rel. Uninsured Employers' Fund v. Hunt*, 191 Mont. 514, 625 P.2d 539 (1981). *Kelleher*, 213 Mont. at 415, 691 P.2d at 824. This reasoning, however, is plainly unsustainable. It is not this Court's prerogative, nor is it within this Court's power, to bestow the WCC with jurisdictional powers, "broad" or otherwise. *Cf. Miller v. District Court*, 2007 MT 149, ¶ 45, 337 Mont. 488, ¶ 45, 162 P.3d 121, ¶ 45.

¶48 As for our decision in *Hunt*, the underlying proceeding in the WCC concerned which of multiple parties was liable to pay the workers' compensation benefits. *See Hunt*, 191 Mont. at 515-17, 625 P.2d at 540-41. Not surprisingly, we held that this was "a dispute with respect to the benefits payable to a claimant, and as such, under section 39-71-2905, MCA, the Workers' Compensation Court has exclusive jurisdiction." *Hunt*, 191 Mont. at 518, 625 P.2d at 542. This reasoning was sufficient to resolve the issue. Nevertheless, we then proceeded to express the view that

> [a]lthough the Workers' Compensation Court is not vested with the full powers of a District Court, it nevertheless has been given broad powers concerning benefits due and payable to claimants under the Act. It has the power to determine which of several parties is liable to pay the Workers' Compensation benefits, or if subrogation is allowable, what apportionment of liability may be made between insurers, and *other matters that go beyond the minimum determination of the benefits payable to an employee*.

*Hunt*, 191 Mont. at 519, 625 P.2d at 542 (emphasis added). Unfortunately, this dictum has taken on a life of its own. *See e.g. Kelleher*, 213 Mont. at 415, 691 P.2d at 824

20

("[W]henever the dispute is related to workers' compensation benefits payable to a claimant, the jurisdiction of the [WCC] goes beyond merely providing a forum for adjudicating workers' claims." (citing *Hunt*)); *Schmill v. Liberty Northwest Ins. Corp.*, 2005 MT 144, ¶ 22, 327 Mont. 293, ¶ 22, 114 P.3d 204, ¶ 22 (asserting that the WCC has "broad jurisdictional powers" (citing *Kelleher*)).

¶49     In *Carlson v. Cain*, 216 Mont. 129, 700 P.2d 607 (1985), this Court went even further, stating that "once the Workers' Compensation Court has acquired jurisdiction of a dispute under the Act, it has jurisdiction to try and decide *all of the issues that arise between the parties before him*."  *Carlson*, 216 Mont. at 141, 700 P.2d at 615 (emphasis added).  No statutory authority was cited for this broad and wholly untenable assertion as to the WCC's jurisdiction.  Indeed, the assertion is based on nothing more than the *Carlson* Court's views that "[i]t is the policy of the law to avoid multifariousness in litigation" and that "[a]ll issues involved in lawsuits should be tried in one trial." *Carlson*, 216 Mont. at 141, 700 P.2d at 615.

¶50     Yet, "the policy of the law" is not a basis for jurisdiction.  Indeed, we rejected a similar argument in *Thompson*:

> While the Workers contend that the "practical effect" of [the statutory scheme at issue] is to foster confusion between two courts, increase the likelihood of conflicting rulings, and compound time and expense for all litigants—a contention which is not supported by any evidence in the record—the statutory scheme is what the Legislature created, and conjectured savings in judicial economy cannot be a source of subject-matter jurisdiction.

*Thompson*, ¶ 34.

¶51 Returning to *Hunt, Kelleher*, and *Schmill*, the purported basis of our holdings in these cases was § 39-71-2905(1), MCA. *See Hunt*, 191 Mont. at 517-19, 625 P.2d at 541-42; *Kelleher*, 213 Mont. at 415, 691 P.2d at 824; *Schmill*, ¶ 22. Section 39-71-2905(1), MCA, states, in pertinent part, as follows:

> A claimant or an insurer who has a dispute concerning any benefits under [the Workers' Compensation Act, Title 39, Chapter 71, MCA,] may petition the workers' compensation judge for a determination of the dispute after satisfying dispute resolution requirements otherwise provided in this chapter. . . . The judge, after a hearing, shall make a determination of the dispute in accordance with the law as set forth in chapter 71 of this title. If the dispute relates to benefits due to a claimant under chapter 71, the judge shall fix and determine any benefits to be paid and specify the manner of payment. After parties have satisfied dispute resolution requirements provided elsewhere in this chapter, the workers' compensation judge has exclusive jurisdiction to make determinations concerning disputes under chapter 71, except as provided in 39-71-317 and 39-71-516. . . .

¶52 Pursuant to this language, the WCC has jurisdiction over "dispute[s] concerning any benefits" under the Workers' Compensation Act. The WCC is specifically authorized "to make determinations concerning [such] disputes." *See also In re Workers' Comp. Benefits of Noonkester*, 2006 MT 169, ¶¶ 20-23, 332 Mont. 528, ¶¶ 20-23, 140 P.3d 466, ¶¶ 20-23; *Liberty Northwest Ins. Corp. v. State Fund*, 1998 MT 169, ¶ 11, 289 Mont. 475, ¶ 11, 962 P.2d 1167, ¶ 11. But no other types of "dispute[s]" are listed, and nothing in the foregoing language even remotely suggests that the WCC has jurisdiction to hear and decide "disputes concerning attorney's fees."

¶53 The Legislature has provided for the WCC to award attorney's fees under narrowly-defined circumstances. *See e.g.* §§ 39-71-611, -612, MCA. Likewise, the Legislature has provided for original jurisdiction in the WCC to decide a particular type

22

of dispute concerning attorney's fees (specifically, the forfeiture or return of attorney's fees). *See* § 39-71-613(5), MCA. Such provisions would be surplusage if § 39-71-2905(1), MCA, were, in fact, the open-ended grant of jurisdiction suggested by our decisions in *Hunt*, *Kelleher*, and *Schmill*. Moreover, the fact that the Legislature has conferred jurisdiction on the WCC to award attorney's fees and decide attorney's fees disputes under specified circumstances compels the conclusion that jurisdiction does *not* exist to award attorney's fees and decide attorney's fees disputes under circumstances *not* specified by the Legislature.

¶54 In more recent decisions, we have emphasized that the WCC is a court of limited jurisdiction whose primary function is to resolve disputes between claimants and insurers concerning workers' compensation benefits. *See Thompson*, ¶¶ 24-26, 30; *Noonkester*, ¶¶ 20-23; *Liberty Northwest*, ¶ 11. As just noted, the Legislature has provided for additional jurisdiction in the WCC over narrowly-defined issues and disputes. It is not the province of this Court to add to the list by implying from or reading into the statutes a broader jurisdictional grant than is expressly stated. *See* § 1-2-101, MCA ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."); *cf. Thompson*, ¶ 32 ("The WCC does not appear in [§ 3-1-102, MCA], and neither we nor the WCC may read the WCC into the list . . . ."). We must be particularly cautious about doing so given that the WCC is a court of *limited* jurisdiction, having only such power as is *expressly* conferred by statute. Simply put, we may not infer additional power from otherwise unambiguous statutory language.

¶55 The language of § 39-71-2905(1), MCA, does not support the expansive readings of the WCC's jurisdiction in the *Hunt*, *Kelleher*, *Carlson*, and *Schmill* decisions. I therefore submit that when the issue is properly presented, this Court should reevaluate our statements in these cases to the effect that the WCC has jurisdiction, beyond that expressly conferred by the Legislature, to hear and decide "all of the issues" that arise between the parties before it.

¶56 That said, *Kelleher* is currently the law; and based on the holding of *Kelleher*, I believe that the Court reaches the correct result under Issue 2. Pinnow's contention is that Plath did not adequately represent her in her dispute with MSF. Although this dispute between Pinnow and Halverson over the adequacy of Plath's representation and Halverson's entitlement to attorney's fees does not concern workers' compensation benefits—indeed, in my view, it is a malpractice claim—it is a dispute that arose within the context of a dispute over workers' compensation benefits. Thus, under the "extended jurisdictional authority" of § 39-71-2905(1), MCA, as interpreted in *Kelleher*, 213 Mont. at 415, 691 P.2d at 825, the WCC has jurisdiction, on remand, to hear and decide the dispute over Halverson's entitlement to the attorney's fees.

¶57 On this basis, I concur on our resolution of Issue 2.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray and Justice Jim Rice join the Special Concurrence of Justice James C. Nelson.

/S/ KARLA M. GRAY
/S/ JIM RICE

24