FILED

September 17 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0776

DA 14-0776

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2015 MT 278

IN RE THE PETITION TO TRANSFER TERRITORY
FROM POPLAR ELEMENTARY SCHOOL
DISTRICT NO. 9 TO FROID ELEMENTARY
SCHOOL DISTRICT NO. 65.

APPEAL FROM:     District Court of the Fifteenth Judicial District,
In and For the County of Roosevelt, Cause No. DV 13-40
Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeffrey A. Weldon, Mary E. Duncan, Felt, Martin, Frazier & Weldon,
P.C.; Billings, Montana

      For Appellee:

          Elizabeth A. Kaleva, Megan D. Morris, Kaleva Law Office; Missoula,
Montana

Submitted on Briefs:   July 15, 2015
Decided:   September 17, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Froid Elementary School District No. 65 (Froid) appeals from an order entered by

the Fifteenth Judicial District Court, Roosevelt County, granting Poplar Elementary

School District No. 9 (Poplar) a new hearing on Froid's petition to transfer territory from

Poplar to Froid. We reverse and remand for further proceedings consistent with this opinion.

¶2 We address the following issue:

*Did the District Court err when it held that the county superintendent abused his discretion by receiving unsworn statements as evidence in the territory transfer hearing?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On March 4, 2013, Froid's Board of Trustees and a group of registered electors in Roosevelt County petitioned the Roosevelt County Superintendent of Schools to transfer territory from the Poplar school district to the Froid school district. Poplar opposed the transfer. Pursuant to § 20-6-105(5), MCA, the county superintendent of schools was required to hold a hearing on the petition. Patricia Stennes, the Roosevelt County Superintendent, appointed Paul Huber to act as deputy superintendent for the purpose of hearing and deciding the petition. Poplar and Froid retained counsel for the matter.

¶4 Huber scheduled a hearing on the petition for April 4, 2013. Attorneys for Poplar and Froid objected to that date as being too soon. After conferring with the attorneys, Huber vacated the April 4th hearing date and reset the hearing for April 23, 2013.

¶5 On April 18, 2013, Huber wrote to counsel for Poplar and Froid to confirm the procedure to be followed during the hearing. The procedure provided for, among other things, the opportunity for district representatives, taxpayers, and other interested parties to speak at the hearing, opening and closing statements by counsel, and the opportunity to cross-examine those who spoke at the hearing. The procedure did not require those who spoke to be placed under oath. Poplar did not object to the procedure.

3

¶6     The hearing was conducted on April 23, 2013. A court reporter was present to transcribe the proceedings. Huber received testimony from twenty-one individuals, some of whom were cross-examined by Poplar and Froid, but none of whom were placed under oath. Poplar did not object to the unsworn testimony.

¶7     After the hearing concluded, Huber left the administrative record open for one week, at Poplar's request. Poplar and Froid then submitted proposed findings of fact, conclusions of law, and orders. Poplar raised no objection to the unsworn testimony in its post-hearing submissions.

¶8     On June 11, 2013, Huber issued his findings of fact, conclusions of law, and order approving the territory transfer. Poplar appealed the decision to the District Court and, upon agreement by the parties, the matter was submitted on cross motions for summary judgment and briefing. Poplar contended (1) the territory transfer statute, § 20-6-105, MCA, is an unconstitutional delegation of legislative authority; (2) the Roosevelt County Superintendent violated Poplar's due process rights by appointing Huber as deputy; (3) Huber violated Poplar's due process rights by not allowing time for discovery, subpoena of witnesses, cross-examination of witnesses, and by admitting unsworn statements; and (4) Huber's decision to transfer territory from Poplar to Froid was an abuse of discretion. Froid argued that (1) the territory transfer statute, § 20-6-105, MCA, is constitutional; (2) the Roosevelt County Superintendent did not violate Poplar's due process rights by appointing Huber as deputy; (3) the parties were allowed to cross-examine witnesses, and Poplar had not preserved its claims regarding discovery,

4

subpoena of witnesses, and admitting unsworn statements because it had made no objection at the administrative hearing; and (4) Huber's decision to transfer territory from Poplar to Froid did not constitute an abuse of discretion.

¶9 The District Court adopted Froid's positions on these issues, including that Poplar had waived many of its due process arguments. However, the court held that the territory transfer statute required statements to be made under oath and that Huber's failure to administer oaths was an abuse of discretion that could not be waived by Poplar, reasoning that "Waiver is not a defense to reversal for abuse of discretion. A party cannot waive a tribunal's obligation to act within bounds of reason and employ conscientious judgment." The District Court awarded summary judgment to Poplar and vacated Huber's findings of facts, conclusions of law, and order transferring territory to Froid. Because the District Court remanded for a new hearing, it did not reach the merits of the territory transfer issue. Froid appeals.

## STANDARD OF REVIEW

¶10 We review an order from a district court acting in an appellate capacity to determine whether the district court reached the correct conclusions under the appropriate standards of review. *Credit Service Co., Inc. v. Crasco*, 2011 MT 211, ¶ 11, 361 Mont. 487, 264 P.3d 1061. The district court reviews the decision of the county superintendent to grant or deny a territory transfer petition for an abuse of discretion. Section 20-6-105(9), MCA. "An abuse of discretion occurs when a tribunal acts 'arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason[,]

5

resulting in substantial injustice.'" *In re Petition to Transfer From Dutton*, 2011 MT 152, ¶ 7, 361 Mont. 103, 259 P.3d 751 (citing *In re Marriage of Guffin*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888). "A decision is arbitrary if it appears to be 'random, unreasonable, or seemingly unmotivated, based on the existing record.'" *Dutton*, ¶ 7 (citing *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993)).

## DISCUSSION

¶11 *Did the District Court err when it held that the county superintendent abused his discretion by receiving unsworn statements as evidence in the territory transfer hearing?*

¶12 The basis for the District Court's holding was that § 20-6-105, MCA, requires statements given during a territory transfer hearing to be under oath, and that Huber's failure to administer oaths was an abuse of discretion. It is undisputed that Poplar failed to object to the unsworn statements prior to, during, or after the hearing. However, the District Court reasoned that "[w]aiver is not a defense to reversal for abuse of discretion" because "[a] party cannot waive a tribunal's obligation to act within bounds of reason and employ conscientious judgment." No authority was cited for this conclusion, but even if it was correct, it fails to properly distinguish the defense of waiver from a litigant's burden to preserve an issue for review. Although courts commonly use the two terms interchangeably—this court included—the questions of waiver and preservation for review require two different inquiries.

¶13 The initial inquiry is whether an issue has been properly preserved for review. An issue can be preserved in different ways, reflecting different kinds of proceedings. *See Hunt v. K-Mart Corp.*, 1999 MT 125, ¶ 10, 294 Mont. 444, 981 P.2d 275 (timely and

6

specific objection); *Hulse v. DOJ, Motor Vehicle Division*, 1998 MT 108, ¶ 46, 289 Mont. 1, 961 P.2d 75 (motion in limine); *McDermott v. Carie*, 2005 MT 293, ¶ 24, 329 Mont. 295, 124 P.3d 168 (motion for a new trial); *State v. Lacey*, 2009 MT 62, ¶ 22, 349 Mont. 371, 204 P.3d 1192 (motion to suppress). Unless a statutorily provided exception exists, or plain error is established, a reviewing court can consider only those issues that are properly preserved for its review. *In re T.E.*, 2002 MT 195, ¶ 20, 311 Mont. 148, 54 P.3d 38 ("In order to preserve a claim or objection for appeal, an appellant must first raise that specific claim or objection in the [lower court]"). Otherwise, not only is it "fundamentally unfair to fault the [lower court] for failing to rule correctly on an issue it was never given the opportunity to consider," but it also permits a litigant, after receiving an undesirable result from the tribunal, to re-try his or her case on appeal. *In re D.H.*, 2001 MT 200, ¶ 41, 306 Mont. 278, 33 P.3d 616; *Rasmussen v. Sibert*, 153 Mont. 286, 295, 456 P.2d 835, 840 (1969).

¶14 If a reviewing court concludes an issue is properly preserved for its review, it must then consider the preserved issue, including whether the opponent's defense of waiver has been established. "[W]aiver is the voluntary and intentional relinquishment of a known right, claim or privilege, which may be proved by express declarations or by a course of acts and conduct which induces the belief that the intent and purpose was waiver." *Hurly v. Lake Cabin Dev., LLC*, 2012 MT 77, ¶ 27, 364 Mont. 425, 276 P.3d 854 (internal citations and quotations omitted). While a claim may be properly preserved for judicial review, the claim may nonetheless have been waived by the party asserting

7

error. *See El Dorado Heights Homeowners' Ass'n v. DeWitt*, 2008 MT 199, ¶ 16, 344 Mont. 77, 186 P.3d 1249 (where issue of lack of personal jurisdiction was preserved by motion for relief from a previous court order, but Court found defendant had waived claim of lack of personal jurisdiction by appearing multiple times in front of district court); *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 22, 310 Mont. 123, 54 P.3d 1 (where issue of whether plaintiff had right to jury trial was preserved by motion to compel arbitration, and Court then examined whether plaintiff had waived right to jury trial). We previously noted the distinction between failing to preserve an issue, or "forfeiture," and "waiver" of an issue, in *Miller v. Eighteenth Jud. Dist. Ct*, 2007 MT 149, ¶ 46, n. 5, 337 Mont. 488, 162 P.3d 121 ("'Forfeiture,' as opposed to 'waiver,' is the correct term in this context, since 'forfeiture' refers to 'the failure to make the timely assertion of a right,' whereas 'waiver' concerns 'the intentional relinquishment or abandonment of a known right.'") (internal citations omitted).

¶15 Here, the District Court, as the reviewing court, first had to determine whether Poplar's claim—that § 20-6-105, MCA, requires sworn testimony—was properly preserved for review before it could take up the question of whether a party can "waive a tribunal's obligation to act within bounds of reason and employ conscientious judgment." The preservation question, in turn, required the District Court to determine whether this statutory proceeding was governed by the Montana Administrative Procedure Act (MAPA) or by the common law, because each of those provides different standards to determine whether a claim has been properly preserved for review. Under MAPA, a

party cannot raise an issue for judicial review that was not raised before the agency (except for the validity of the statute that gave rise to the administrative proceeding), unless good cause for failure to raise the issue is shown. Section 2-4-702(1)(b), MCA. Under the common law, a party cannot raise an issue for the first time on appeal unless the court accepts plain error review. *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 40, 321 Mont. 364, 91 P.3d 569. Thus, if Poplar did not properly preserve its issue, then, under MAPA, the District Court could review the issue only if Poplar showed good cause, while, under the common law, only if Poplar established plain error and the District Court exercised discretionary review.

¶16     MAPA governs procedure, rules, and judicial review of final "agency" decisions in "contested cases." Section 2-4-101 et seq., MCA. "Agency" means an agency as defined in § 2-3-102, MCA, of the Montana Public Participation in Governmental Operations Act ("Public Participation Act"). Section 2-4-102(2)(a), MCA. In turn, the Public Participation Act defines "agency" as "any board, bureau, commission, department, authority, or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts . . . ." Section 2-3-102, MCA. However, § 2-4-102(2)(b), MCA, explicitly excludes from the definition of "agency" a "school district, a unit of local government, or any other political subdivision of the state." County superintendents are local, not state, government officials. Section 7-4-3005, MCA. Thus, proceedings before county superintendents are excluded from MAPA as a "unit of local government."

9

¶17 The legislative history of MAPA confirms this was the intent of the Montana Legislature. The Legislature enacted the local government exclusion in the 1985 session in response to our decision in *Yanzick v. Sch. Dist.*, 196 Mont. 375, 383, 641 P.2d 431, 436 (1982), where we held that a county superintendent was an "agency" under MAPA.[1] *See State Administration Committee Deliberation on SB 13*, Ch. 671 2-3 (Jan. 8, 1985); *State Administration Committee Deliberation on SB 13*, Ch. 671 2-3 (March 7, 1985); *see also* William L. Corbett, *Montana Administrative Law Practice: 41 Years After the Enactment of the Montana Administrative Procedure Act*, 73 Mont. L. Rev. 339, 341 (2012). Specifically, regarding the statutory proceeding at issue, the Legislature had previously provided that judicial review of territory transfers would be governed by MAPA, but removed that provision in 1997. *See* 1997 Mont. Laws 403; *compare* § 20-6-320(7), MCA (1993) *with* § 20-6-320(6), MCA (1997). In 2003, the Legislature enacted a new territory transfer statute but used nearly identical language with regard to the judicial review provision of the new statute. *See* 2003 Mont. Laws 151. The only

---

[1] The preamble to SB 13, introduced in the 1985 session, provided: "Whereas, the Montana Supreme Court has held in recent opinions that the Montana Administrative Procedure Act applies to school districts; and whereas, it is clear from the language of section 2-4-102(2), MCA, as originally enacted, and from the 1971 official comments of the Administrative Procedures Subcommittee recommending the enactment of the Montana Administrative Procedure Act that the Act was never intended to apply to units of local government, school districts, or any other political subdivisions; and whereas, substantial confusion could result if the provisions of the Act are continued to be applied to any government entity other than state agencies; and whereas, it is the intent of the Legislature that the Act be applied only to those agencies of state government provided for in the Act and the belief of the Legislature that the Act was never intended to apply to units of local government, school districts, or any other political subdivisions of the state. Therefore, it is the intent of this bill to clarify that the Montana Administrative Procedure Act does not apply to units of local government, school districts, or any other political subdivisions of this State."

addition to the judicial review provision was an articulation of the standard of review to be applied by district courts, which would be superfluous if MAPA, with its own standard of review, applied to territory transfers. *See* § 2-4-704(2)(a)(i-vi), MCA. Therefore, without any specific statutory language so providing, which is entirely consistent with the statute's legislative history, we conclude that the exclusion in § 2-4-102(2)(b), MCA, removes actions of county superintendents from MAPA's purview. The common law thus governs whether Poplar's claim—that § 20-6-105, MCA, requires sworn testimony—was properly preserved for review.[2]

¶18 Under the common law, it is well settled that issues raised for the first time on appeal will not be reviewed. *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 53, 303 Mont. 274, 16 P.3d 1002. The exception under the common law is plain error review. *Paulson*, ¶ 40. A reviewing court may discretionarily review a claimed error not previously raised below which affects fundamental constitutional rights where failing to review it may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Paulson*, ¶ 40. A court's inherent power of plain error review should be used sparingly and only in exceptional cases meeting one of the criteria. *Paulson*, ¶ 40. We previously exercised plain error review in a school territory transfer case on the ground that the then-current territory transfer statute was an unconstitutional delegation of legislative authority because the legislature had failed to prescribe with reasonable clarity

---

[2] The District Court also concluded that MAPA did not apply to this proceeding.

the limits of power delegated to the superintendent. *In the Petition to Transfer Territory from High Sch. Dist. No. 6*, 2000 MT 342, ¶ 11, 303 Mont. 204, 15 P.3d 447 ("*Lame Deer*").

¶19 Here, the District Court erred when it decided the waiver issue (concluding that waiver was not possible as a matter of law), and then reached the merits of the statutory question (concluding that § 20-6-105, MCA, required sworn testimony) without first determining the primary issue of whether Poplar's claim had been preserved and, if not, whether plain error review could be exercised. Even giving the benefit of the doubt that the District Court's decision to reach the waiver issue and then the merits was an implied exercise of plain error review, we conclude that it erred in so doing.

¶20 First, given the lack of any objection to or questioning of the procedure, it is clear that Poplar failed to preserve its statutory issue concerning the necessity of sworn testimony. Clearly, Huber was never given the opportunity to consider the question and, if necessary, correct the course of the proceeding. Thus, plain error review was necessary to review this unpreserved issue. Although we exercised plain error review in *Lame Deer*, Poplar's claim does not merit similar treatment. The constitutionality of the territory transfer statute was at issue in *Lame Deer*, while the issue here is a procedural question under the statute, and nothing in our review of the record indicates that a miscarriage of justice, a fundamental unfairness, or a threat to the integrity of the process resulted from the procedure employed. And, as a reason bearing on the exercise of plain error review, we find no authority, and Poplar has cited none, for the District Court's

12

holding that a "party cannot waive a tribunal's obligation to act within bounds of reason and employ conscientious judgment." In sum, Poplar's claim does not warrant plain error review. Therefore, Poplar's statutory claim was not properly raised before the District Court and it was error for the District Court to reach the merits of the question.

¶21 We reverse and remand to the District Court for further proceedings in review of the county superintendent's decision, in accordance herewith.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT

Justice James Jeremiah Shea, dissenting.

¶22 I agree with the majority's conclusion that Poplar failed to preserve the statutory issue regarding the necessity of sworn testimony, and I likewise agree that this issue does not warrant plain error review. Opinion, ¶ 20. However, I would nevertheless affirm the District Court's order granting summary judgment in favor of Poplar and against Froid and setting aside Huber's Findings of Fact, Conclusions of Law, and Order on the grounds that Superintendent Stennes had no authority to recuse herself and appoint Huber in her stead.

¶23 Section 20-6-105, MCA, sets forth very specific criteria for conducting a territory transfer hearing. In pertinent part, the statute provides:

13

(6) *The county superintendent shall* conduct a hearing as scheduled . . .

(7) After receiving evidence from both the proponents and opponents of the proposed territory transfer . . . *the county superintendent shall*, within 30 days after the hearing, issue findings of fact, conclusions of law, and an order.

(8) If, based on a preponderance of the evidence, *the county superintendent determines* that the evidence on the effects described in subsection (6) supports a conclusion that a transfer of the territory is in the best and collective interest of students in the receiving and transferring districts and does not negatively impact the ability of the districts to serve those students, *the county superintendent shall grant the transfer.* If *the county superintendent determines* that, based on a preponderance of the evidence presented at the hearing, a transfer of the territory is not in the best and collective interest of students in the receiving and transferring districts and will negatively impact the ability of the districts to serve those students, *the county superintendent shall deny the territory transfer*.

(9) *The decision of the county superintendent* is final 30 days after the date of the decision unless it is appealed to the district court by a resident, taxpayer, or representative of either district affected by the petitioned territory transfer. *The county superintendent's decision* must be upheld unless the court finds that *the county superintendent's decision* constituted an abuse of discretion under this section.

Section 20-6-105(6) to (9), MCA (emphasis added).

¶24 Section 20-6-105, MCA, vests in the county superintendent the exclusive authority to conduct a territory transfer hearing, after which the county superintendent shall issue findings of fact and conclusions of law, and an order either granting or denying the territory transfer. In this case, the individual in whom that exclusive authority was vested was Superintendent Stennes.

¶25 As required by § 20-3-201(1), MCA, Superintendent Stennes was the duly elected Roosevelt County Superintendent of Schools. The only statutory provision allowing a

14

duly elected county superintendent to appoint another individual to hear and decide a matter in controversy is when the county superintendent is disqualified pursuant to § 20-3-211, MCA. In those specific and limited circumstances, the disqualified county superintendent "must appoint another county superintendent." Section 20-3-212(1), MCA. There is no statutory authority for a county superintendent to recuse herself and appoint a deputy superintendent for the limited purpose of hearing and ruling on a territory transfer petition.

¶26 In *Pinnow v. Mont. State Fund*, 2007 MT 332, 340 Mont. 217, 172 P.3d 1273, we addressed the issue of whether a District Court Judge had authority to assume jurisdiction over a case in the Workers' Compensation Court (WCC) after the WCC Judge recused himself. *Pinnow*, ¶ 14. Although the Administrative Rules of Montana provided for the WCC Judge's recusal and the District Court Judge's assumption of jurisdiction, we held that an administrative rule could not "create authority not otherwise provided for by the Constitution or statutes adopted pursuant to the Constitution." *Pinnow*, ¶ 23. In the absence of such authority, we concluded that the District Court Judge who had assumed jurisdiction "had no more authority than any other member of the general public over this case," and we vacated all orders entered by the District Court Judge. *Pinnow*, ¶ 25.

¶27 In *Lame Deer*, we recognized that territory transfers involve substantial rights of the litigants with constitutional implications. *Lame Deer*, ¶ 11. Indeed, we held the territory transfer statute at issue in *Lame Deer* to be an unconstitutional delegation of legislative authority because of the statute's "broad grant of discretion to a county

15

superintendent of schools, unchecked by any standard, policy or rule of decision." *Lame Deer*, ¶ 19. In this case, it seems beyond dispute that Superintendent Stennes lacked the statutory authority or discretion to appoint Huber to hear and rule on Poplar's territory transfer petition. In other words, Huber "had no more authority than any other member of the general public over [Poplar's petition]." *Pinnow*, ¶ 25. Both parties in this case had a due process right to have this petition heard and decided by the duly elected county superintendent, as expressly prescribed by § 20-6-105, MCA. It seems to me incongruous that we would hold, as we did in *Lame Deer*, that it was unconstitutional for a county superintendent to act within the authority granted by statute because that authority was overly broad, yet we would excuse a county superintendent recusing herself and making an ad hoc appointment of a deputy superintendent in contravention of the statute's narrowly prescribed process.

¶28 Relevant to the majority's dispositive issue in this case—the District Court's error in reaching the merits of Poplar's statutory claim because it was not properly raised—it bears noting that although Poplar did not object to Huber's appointment during the territory transfer hearing, Poplar did raise the issue in its summary judgment motion before the District Court and again on appeal. In *Pinnow*, neither party objected to the District Court Judge assuming jurisdiction over the case, nor did either party raise the issue on appeal. *Pinnow*, ¶ 15. Nevertheless, we deemed it necessary to address the issue, sua sponte, because we determined that a lack of statutory authority for the District Court Judge's assumption of jurisdiction would render any rulings made by him void.

16

*Pinnow*, ¶ 17.  I submit we have a similar obligation to address this issue in the present case, and resolve it consistent with our established precedent.  Therefore, I dissent.

/S/ JAMES JEREMIAH SHEA